## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CHARLENE HALL,
individually and on behalf of all
others similarly situated,
  c/o Justly Prudent
  1140 3rd St. NE, Suite 2180
  Washington, DC 20002

      Plaintiff,

      v.

HEATHER HILL PROPERTY COMPANY LLC,
  c/o The Corporation Trust Incorporated
  2405 York Road
  Lutherville Timonium, MD 21093

HEATHER HILL OPERATING COMPANY LLC,
  c/o The Corporation Trust Incorporated
  2405 York Road
  Lutherville Timonium, MD 21093

ONEWALL COMMUNITIES LLC,
  c/o The Corporation Trust Incorporated
  2405 York Road
  Lutherville Timonium, MD 21093

      Defendants.
_____/

Case No. 1:25-cv-00238-ABA

DEMAND FOR JURY TRIAL

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Charlene Hall ("Ms. Hall"), individually and on behalf of all others similarly

situated, brings this Amended Class Action Complaint against Defendants Heather Hill Property

Company LLC ("HHPC"), Heather Hill Operating Company LLC ("HHOC"), OneWall

Communities LLC ("OneWall"), and alleges upon personal knowledge as to her own actions, and

upon information and belief as to all other matters, as follows:

## INTRODUCTION

1.      This class action arises from Defendants' systematic and pervasive failure to maintain habitable living conditions at Heather Hill Apartments ("Heather Hill" or "Heather Hill Apartments"), a 459-unit apartment complex located in Temple Hills, Maryland, while operating without required licenses and collecting rent and fees in violation of Maryland law.

2.      From April 2022 through January 13, 2025, Defendants operated Heather Hill without the required multi-family dwelling license from Prince George's County, in violation of local housing codes and Maryland law. During this period, Defendants continued to collect rent from tenants while failing to maintain the property in a habitable condition.

3.      Defendants have allowed Heather Hill to deteriorate into deplorable conditions, with widespread issues including sewage backups, water leaks, mold, pest infestations, and numerous fire and safety code violations. Despite receiving countless maintenance requests and complaints from tenants, Defendants have consistently failed to make necessary repairs or address these serious habitability issues.

4.      When Defendants finally applied for a temporary license in May 2024, it was void due to outstanding violations. The temporary license was subsequently suspended in August 2024 after Heather Hill failed a fire safety inspection. Despite having no valid license up until January 13, 2025, Defendants continued to collect rent and threaten tenants with eviction.

5.      Through this action, Ms. Hall seeks to remedy Defendants' violations of Maryland consumer protection laws and obtain relief for herself and all other similarly situated tenants who have suffered damages due to Defendants' unlawful conduct.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over this action under Md. Code Ann., Cts. & Jud. Proc. § 1-501.

7.      This Court has personal jurisdiction over Defendants because they conduct business in Maryland, own and operate real property in Maryland, and the acts and omissions giving rise to this action occurred in Maryland.

8.      Venue is proper in this Court under Md. Code Ann., Cts. & Jud. Proc. § 6-201(a) because the Defendants carry on a regular business in Prince George's County. Venue is further proper under Md. Code Ann., Cts. & Jud. Proc. § 6-203 because the real property at issue is situated within Prince George's County.

## THE PARTIES

9.      Plaintiff Charlene Hall is a resident of Prince George's County, Maryland, and a tenant at Heather Hill Apartments.

10.     Defendant Heather Hill Property Company LLC is a Delaware limited liability company with its primary place of business at 707 Summer Street, 5th Floor, Stamford, Connecticut 06901. It registered with the Maryland State Department of Assessments and Taxation ("SDAT") on February 10, 2022, and is the owner of Heather Hill Apartments.

11.     Defendant Heather Hill Operating Company LLC is a Delaware limited liability company with its primary place of business at 707 Summer Street, 5th Floor, Stamford, Connecticut 06901. It registered with SDAT on January 31, 2022, and operates as the master lessee and property manager for Heather Hill Apartments.

12.     Defendant OneWall Communities LLC is a New York limited liability company with its primary place of business at 707 Summer Street, 5th Floor, Stamford, Connecticut

06901. OneWall is the parent company of HHPC and HHOC, and OneWall directs and controls HHPC and HHOC. OneWall registered with SDAT on April 23, 2021.

## BACKGROUND

### *Common Scheme and Enterprise*

13.     Defendants operate as a joint enterprise with respect to the operations of Heather Hill. OneWall acquired the property and created HHPC and HHOC as subsidiary instrumentalities. HHPC holds title to the property but has delegated operational control to HHOC as master lessee. HHOC collects rent and fees on behalf of OneWall and HHPC. OneWall manages HHPC and HHOC, and it directs all communications with tenants. Upon information and belief, all three entities share officers and resources.

14.     This integrated structure makes each Defendant liable for the acts of the others in operating Heather Hill.

15.     Between April 2022 and January 13, 2025, Defendants engaged in a common scheme to operate Heather Hill Apartments without required licensing. HHPC and HHOC knowingly operated without the required multi-family dwelling license despite clear statutory requirements. HHOC managed lease signings and renewals, and collected rent and fees, despite knowledge of the missing license. OneWall benefited from unlicensed operations through its corporate ownership structure.

### *Defendants' Unlicensed Rental Operations*

16.     OneWall purchased Heather Hill in March 2022. At some point shortly thereafter, OneWall transferred legal title to Heather Hill to HHPC.

17.     In or around April 2022, HHPC and HHOC executed a Tenant/Landlord Subordination and Assignment Agreement, whereby HHPC leased Heather Hill and all other

interests in Heather Hill to HHOC, and HHOC assigned its interests in all leases and tenant rents to HHPC.

18.     Under Section 13-186(b) of the Prince George's County Code, OneWall and/or HHPC had 30 days following purchase to apply for a multi-family dwelling license.

19.     OneWall and/or HHPC failed to apply for or obtain the required license for approximately 25 months, from April 2022 until May 7, 2024. During this time, HHOC knew or should have known that OneWall and/or HHPC had not obtained the required rental license to lease units at Heather Hill.

20.     During this unlicensed period, HHPC and/or HHOC: (a) advertised and showed apartments to prospective tenants; (b) entered into new lease agreements; (c) renewed existing leases; (d) collected rent and other fees; (e) assessed late fees; and (f) filed over 130 failure-to-pay rent actions against tenants.

21.     When HHPC finally applied for a temporary license on May 7, 2024, it was void on its face due to numerous outstanding violations.

22.     On August 4, 2024, Heather Hill failed a Fire Safety Inspection, leading to suspension of the temporary license on August 5, 2024.

23.     Despite lacking valid licensing, HHPC and HHOC continued to collect rent and threaten tenants with eviction, as evidenced by their August 19, 2024 notice to tenants demanding rent payments and warning of late fees, up until HHPC obtained its temporary rental license on or about January 13, 2025.

### *Widespread Habitability Issue*

24.     Tenant interviews, property inspections, and notices of violation reveal pervasive habitability issues affecting the entire Heather Hill community, including water and sewage

problems, pest infestations, health and safety violations, a pattern of failed maintenance, and severe health impacts on tenants caused by black mold and other unsanitary conditions.

25.     Multiple buildings at Heather Hill suffer from recurring sewage backups in sinks, toilets, and bathtubs. For example: (a) tenant Juanita Caldwell reported sewage backups in her master bathroom tub "multiple times" throughout her tenancy; (b) tenant Kemba Colvin's bathroom fixtures "always smell of sewage and waste backups"; (c) tenant Tiara Perry experiences constant sewage backups in her kitchen sink due to damaged pipes that Defendants have failed to repair despite contractor confirmation of the issue; and (d) tenant MarQuetta Parks endured daily occurrences of brown water flowing from her tub faucet, accompanied by sudden water shutoffs.

26.     Water leaks and flooding are common throughout the complex. Tenant Darlene Johnson has persistently reported water/urine leaks from her bathroom ceilings since 2019. HHPC and HHOC failed to address, or otherwise ignored, Ms. Johnson's maintenance requests regarding the issues. Tenant Jerrell Shuford experienced a major leak in his master bathroom that led to widespread black mold growth. HHPC and HHOC failed to address, or otherwise ignored, Mr. Shuford's maintenance requests regarding the issue. Tenant Alicia Hall frequently reported yellowish water coming out of her apartment's faucets. Several other tenants have reported water damage to their property that HHPC and HHOC refused to replace.

27.     The entire Heather Hill property is infested with various pests, including: (a) widespread roach infestations reported by dozens of tenants, including Ms. Hall; (b) bat infestations in common areas and third floor units; and (c) rodent infestations. For example: (i) tenant Juanita Caldwell reported roach nests behind her refrigerator and stove; (ii) tenant Kelly Wright experienced a severe gnat infestation; and (iii) tenant Tiara Perry encountered mice,

roaches, water bugs, bats, and snakes throughout her apartment and/or the common areas of the apartment complex. Furthermore, multiple tenants, such as Tracie Caudle, reported bat infestations in common areas and third floor units.

28. The pest control efforts undertaken by HHOC have been inadequate or non-existent. Tenant Kemba Colvin reported that management "claims to put your unit on a list but never shows up." Multiple tenants have been forced to pay for their own pest control because of HHOC's failure to adequately address the widespread issue.

29. Prince George's County inspections have documented numerous violations affecting tenant health and safety, including: (a) mold growth in floors, walls, and under sinks; (b) inoperable fire safety systems; (c) missing or inadequate fire extinguishers; (d) non-functioning heating and cooling systems; and (e) structural issues including holes in walls and ceilings.

30. Multiple tenants reported heating systems that were non-functional during the winter months, and air conditioning ("AC") systems that failed to work during the summer months. For instance, tenant Tiara Perry endured non-functioning AC for over a year despite submitting several maintenance requests to address the issue. Tenants Tracie Caudle and Jessica Rivers also reported significant periods without a functioning AC system. HHOC failed to timely address, or otherwise ignored, these tenants' maintenance requests regarding the issue.

31. HHPC and HHOC have established a pattern of failing to properly address maintenance issues. HHPC and/or HHOC routinely close maintenance tickets without completing repairs. HHPC and/or HHOC send unqualified staff to address complex repairs that require licensed professionals. HHPC and/or HHOC make temporary patches rather than

permanent repairs. HHPC and/or HHOC regularly ignore follow-up requests made by tenants, and they commonly require multiple complaints before taking any action.

32.     The uninhabitable conditions have caused documented health issues for numerous tenants, including: (a) respiratory problems requiring medical treatment; (b) skin conditions from mold exposure; (c) children experiencing asthma exacerbation; and (d) allergic reactions requiring prescription medication.

33.     The presence of black mold within the apartments at Heather Hill has significantly impacted the health and wellbeing of multiple tenants. For example: (a) the exposure to black mold within tenant Jessica Rivers's apartment has caused her to suffer severe headaches and frequent nosebleeds; (b) tenant Jerrell Shufford's family experienced health issues from a black mold infestation in their bathroom; and (c) Ms. Hall required regular nebulizer treatments and suffered blood clots due to exposure to black mold in her apartment. Furthermore, multiple children experienced asthma exacerbations due to mold exposure.

### *Public Enforcement Actions by Maryland Attorney General*

34.     On November 11, 2024, Maryland's Attorney General ("AG") filed a Statement of Charges against Defendants, alleging claims for similar widespread habitability issues at Heather Hill.

35.     On January 17, 2025, the AG filed a motion for temporary restraining order and preliminary injunction against Defendants in the Circuit Court for Prince George's County (Case No. C-16-CV-25-000284). On January 21, 2025, the circuit court granted the motion and entered a temporary restraining order against Defendants.

36.     On January 28, 2025, following a day-long evidentiary hearing, the circuit court entered a preliminary injunction against Defendants, requiring that Defendants, among other things, cease and desist collecting rent or any other fees from tenants during unlicensed periods.

### Ms. Hall's Experience

37.     Ms. Hall has been a tenant at Heather Hill since 2017. Her experience exemplifies the systematic neglect and uninhabitable conditions that Defendants have maintained at the property.

38.     Ms. Hall's unit has suffered from severe structural issues, including improperly installed flooring that have caused her to fall, defective interior doors, broken patio doors creating a security risk, and missing fire extinguishers on her floor despite repeated requests.

39.     Ms. Hall has experienced persistent water damage and mold issues stemming from: (a) recurring leaks through bathroom exhaust fans; (b) water bubble formations in the kitchen ceiling drywall; (c) yellow liquid seeping through bathroom ceiling; (d) water damage to closet ceilings and walls; (e) kitchen cabinets separating from walls due to water damage; (f) warped and cracking countertops from water infiltration; and (g) recurring black mold growth that Defendants merely painted over.

40.     Ms. Hall's unit has lacked essential services and appliances, including: (a) no heat since at least November 29, 2023; (b) persistent periods without hot water; (c) a non-functioning oven reported multiple times; (d) a malfunctioning refrigerator that has forced her to discard impacted groceries and endangered her insulin; (e) a defective dishwasher; (f) a leaking washing machine; and (g) non-working kitchen lights.

41.     Ms. Hall's unit has been plagued by pest infestations, including: (a) mouse infestation evidenced by mouse droppings behind appliances; (b) dead mice visible in common

areas; (c) visible holes in walls allowing pest entry; and (d) Defendants' inadequate pest control response.

42.    These conditions have caused Ms. Hall and her family to suffer serious health issues, including respiratory problems, severe headaches, ear infections, chronic coughing, nasal and sinus congestion, body rashes, dizziness, and nosebleeds requiring specialized care from an Otolaryngologist.

43.    Ms. Hall's doctors have confirmed her health issues are linked to the mold in her unit, as evidenced by: (a) a March 2018 doctor's letter connecting her symptoms to black mold exposure; (b) August 14, 2022 letter from her allergy doctor regarding mold impacts; (c) ongoing medical treatment for mold-related conditions; and (d) similar symptoms experienced by her children and grandson.

44.    Despite hundreds of maintenance requests, HHPC and/or HHOC have failed to properly address these issues. HHPC and/or HHOC persistently ignore or delay responses to Ms. Hall's maintenance tickets. HHPC and/or HHOC provided misleading information to Ms. Hall about the causes of certain problems, and HHPC and/or HHOC have engaged in retaliatory conduct against Ms. Hall with baseless lease violation citations.

45.    When HHPC and/or HHOC did respond to Ms. Hall's complaints, their actions were inadequate. HHPC and/or HHOC painted over the black mold instead of remediating it, they refused to open walls to address the water lease, and they made superficial repairs that failed to resolve issues.

### *CLASS ACTION ALLEGATIONS*

46.    Ms. Hall brings this action pursuant to Maryland Rule 2-231 on behalf of herself and all others similarly situated, as members of the proposed class defined as all persons who

have resided at Heather Hill Apartments at any time since April 2022 and paid rent or other fees to Defendants (the "Class").

47.    <u>Numerosity</u>: The proposed class is so numerous that joinder of all members is impracticable. Heather Hill contains 459 apartment units. Upon information and belief, the class consists of over 500 current and former tenants who have resided at Heather Hill since April 2022.

48.    <u>Commonality</u>: There are questions of law and fact common to the class that predominate over any questions affecting only individual members, including: (a) whether Defendants operated Heather Hill without required licensing; (b) whether Defendants collected rent during periods when they lacked legal authority to do so; (c) whether Defendants maintained Heather Hill in habitable condition; (d) whether Defendants violated the Maryland Consumer Protection Act; (e) whether Defendants violated the Maryland Consumer Debt Collection Act; (f) whether class members are entitled to damages and other relief; and (g) the proper measure of damages.

49.    <u>Typicality</u>: Ms. Hall's claims are typical of the claims of the class members. Ms. Hall and all class members: (a) resided at Heather Hill during Defendants' unlicensed operation; (b) paid rent and fees to Defendants; (c) experienced similar habitability issues; (d) were subjected to the same maintenance practices; and (e) suffered similar types of damages.

50.    <u>Adequacy</u>: Ms. Hall will fairly and adequately protect the interests of the class because she has retained experienced counsel competent in class action litigation, her interests are aligned with those of the class, she has demonstrated commitment to pursuing this action, and she has no conflicts that would interfere with class representation.

51.    Superiority: A class action is superior to other available methods for fairly and efficiently adjudicating this controversy because: (a) individual claims would be uneconomical to litigate separately; (b) individual tenants lack resources to pursue individual actions; (c) multiple individual actions would burden the courts; (d) class treatment will provide consistent results; (e) common evidence will prove the claims.

**COUNT I**
**Violation of the Maryland Consumer Protection Act against all Defendants**
**Md. Code Ann., Com. Law §§ 13-101, et seq.**

52.    Plaintiff incorporates herein the allegations set forth in paragraphs 1 through 51, above.

53.    The Maryland Consumer Protection Act prohibits unfair, deceptive, and abusive trade practices in the rental of consumer realty and collection of consumer debt. Md. Code Ann., Com. Law §§ 13-303(1), (2) and (5).

54.    Defendants are "merchants" under the CPA because they are engaged in the business of leasing consumer realty and offering consumer realty for lease. Md. Code Ann., Com. Law § 13-101(g).

55.    The apartment units at Heather Hill constitute "consumer realty" under the CPA because they are primarily for personal, family, or household purposes. Md. Code Ann., Com. Law § 13-101(d).

56.    HHPC and HHOC engaged in unfair and deceptive trade practices prohibited by Section 13-301 of the CPA. Specifically, HHPC and/or HHOC falsely represented that they had the legal authority to lease apartments and collect rent when they lacked required licensing. HHPC and/or HHOC falsely represented that Heather Hill apartments were of a particular standard, quality, and grade when they were not, including advertising "renovated" units that

were uninhabitable. HHPC and/or HHOC failed to disclose material facts to tenants and prospective tenants about the property's condition and their lack of required licensing. HHOC represented that they would maintain the property in habitable condition when they had no intention of doing so. HHPC and/or HHOC advertised and offered apartments without intent to deliver them in the condition represented. HHOC collected rent and fees during periods when they had no legal authority to do so. HHPC and/or HHOC made false and misleading statements about their right to collect rent and impose late fees while operating without valid licensing.

57.     HHPC and HHOC engaged in unfair trade practices by: (a) operating Heather Hill without required licensing and inspections; (b) refusing to make necessary repairs while continuing to collect rent; (c) maintaining deplorable conditions that posed serious health and safety risks; (d) filing baseless court actions against tenants while lacking legal authority to collect rent; and (e) threatening eviction and late fees while operating without valid licensing.

58.     These unfair and deceptive practices caused substantial injury to Plaintiff and the class members who: (a) paid rent and fees that Defendants had no legal right to collect; (b) lived in uninhabitable conditions; (c) suffered damage to their health and property; (d) incurred expenses for alternative housing, medical care, and replacement of damaged property; and (e) face potential eviction despite Defendants' lack of legal authority.

59.     OneWall is vicariously liable for the acts of HHPC and HHOC as their parent company and controlling entity. HHPC and HHOC acted at all relevant times as agents of OneWall. At all relevant times, OneWall directed and controlled HHPC and HHOC, and knowingly permitted HHPC and/or HHOC to lease units at Heather Hill and collect rent from tenants while not having the required rental license to lease the units.

60.    Plaintiff and class members could not have reasonably avoided their injuries because HHPC and/or HHOC concealed their lack of licensing and misrepresented their authority to operate Heather Hill.

61.    The injuries suffered by Plaintiff and class members are not outweighed by any countervailing benefits to consumers or competition.

62.    As a direct and proximate result of Defendants' violations of the CPA, Plaintiff and class members have suffered actual damages including: (a) costs of temporary alternative housing; (c) medical expenses; (d) damage to personal property; (e) expenses for pest control and repairs; and (f) emotional distress.

## COUNT II
### Breach of Implied Warranty of Habitability
### and Violation of Maryland Code, Real Property § 8-211 against all Defendants

63.    Plaintiff incorporates herein the allegations set forth in paragraphs 1 through 51, above.

64.    Under Maryland law, residential landlords impliedly warrant that rental properties are habitable and fit for human occupancy. This warranty is incorporated into every residential lease.

65.    Maryland Code, Real Property § 8-211 codifies tenants' rights to habitable premises, requiring landlords to repair conditions that constitute "serious and substantial defects" which are a "substantial and serious threat to the life, health, and safety of occupants."

66.    Prince George's County Code § 13-113(c) defines a property as "unfit for human occupancy" when it is "unsafe, unlawful, or, because of the degree to which the structure is in disrepair or lacks maintenance, is unsanitary, vermin or rat infested, contains filth and

contamination, or lacks ventilation, illumination, sanitary or heating facilities, utilities, or other

essential equipment."

67.     HHPC breached the implied warranty of habitability and violated § 8-211 by

failing to maintain Heather Hill in habitable condition, as evidenced by:

(a) widespread sewage backups affecting multiple units, including raw sewage
backups in tenant Juanita Caldwell's master bathroom, chronic sewage problems
in tenant Kemba Colvin's sinks and tub, and sewage backups in tenant Tiara
Perry's kitchen requiring wall removal.

(b) Pervasive water damage and leaks, including water/urine leaks through tenant
Darlene Johnson's bathroom ceilings since 2019, flooding in tenant Juanita
Caldwell's second bedroom and kitchen, and major leaks causing mold growth in
tenant Jerrell Shuford's master bathroom.

(c) Dangerous pest infestations affecting entire buildings, including roach nests
behind appliances, bat infestations in common areas and units, rodent infestations
causing property damage, and vermin entering through holes in the units that
Defendants failed or otherwise refused to repair.

(d) Non-functioning essential systems, including inoperable heating and cooling
systems, broken plumbing requiring resident-funded repairs, malfunctioning
appliances, and failed fire safety systems.

(e) Serious health hazards, including toxic mold growth, raw sewage exposure,
inadequate ventilation, and contaminated walls and ceilings.

68.     These conditions constitute serious and substantial defects that threaten tenants'

health and safety, as evidenced by: (a) medical treatment required for respiratory infections, skin

conditions, allergic reactions, and asthma exacerbation; (b) property damage from water

infiltration, sewage backups, pest infestations, and mold growth; and (c) loss of essential services

including functioning bathrooms, safe drinking water, climate control, and sanitary food storage.

69.     HHPC and HHOC had actual notice of these conditions through: (a) multiple

maintenance requests from Ms. Hall and several other tenants; (b) direct complaints to

management; (c) notices of violation from Prince George's County; (d) failed inspections; and

(e) documentation from contractors. The specific dates for the submission of the maintenance requests prior to November 2024 are in the exclusive control of the Defendants. Ms. Hall and several of the other tenants are unable to view their respective maintenance request history log maintained by one or more of the Defendants.

70.    Despite notice, HHPC and HHOC failed to repair these conditions within a reasonable time or at all, demonstrating a pattern of: (a) ignoring maintenance requests; (b) making inadequate temporary repairs; (c) closing tickets without completing repairs; (d) refusing to address root causes of problems; and (e) failing to respond to follow-up requests.

71.    As owner, HHPC had primary responsibility to maintain habitable conditions. HHOC, as property manager, and OneWall, as controlling entity, are jointly liable for breach of warranty through their direct involvement in property maintenance and operations.

72.    As a direct and proximate result of Defendants' wrongful conduct, Ms. Hall and class members have suffered and continue to suffer substantial harm.

**<u>COUNT III</u>**
**Violation of the Maryland Consumer Debt Collection Act by Defendant HHOC**
**Md. Code Ann., Com. Law §§ 14-201, *et seq.***

73.    Plaintiff incorporates herein the allegations set forth in paragraphs 1 through 51, above.

74.    The Maryland Consumer Debt Collection Act ("MCDCA") prohibits collectors from collecting or attempting to collect consumer debts that they know are not owed, engaging in unlicensed debt collection activity, and engaging in conduct that violates §§ 807 and 808 of the Fair Debt Collection Practices Act.

75.     HHOC is a "collector" under the MCDCA because it collects or attempts to collect consumer debts owed to HHPC and/or OneWall. HHOC directly engaged in collection activities while OneWall directed and controlled such activities.

76.     The rent and fees HHOC attempted to collect constitute "consumer debts" under the MCDCA.

77.     Defendants HHOC violated the CDCA by:

(a) Collecting and attempting to collect rent and fees during periods when: (i) they knew HHPC lacked legal authority to collect rent due to invalid licensing; and (ii) they knew the property failed to meet basic habitability standards.

(b) Using false, deceptive, and misleading representations, including: (i) claiming legal right to collect rent during unlicensed periods; (ii) misrepresenting authority to impose late fees; (iii) threatening legal action they could not legally take; and (iv) claiming rent was due when the units at Heather Hill could not legally be leased.

(c) Using unfair and unconscionable means to collect debts by: (i) filing over 130 baseless failures to pay rent actions; (ii) threatening eviction without legal authority; (iii) demanding payment for uninhabitable units; and (iv) attempting to collect through coercion and harassment.

78.     For example, on August 19, 2024, after HHPC's rental license was suspended, HHOC issued notices to tenants demanding rent payments, requiring payment by specific methods, threatening late fees, and implying legal authority they did not possess. HHOC issued the notices despite knowing that HHPC's rental license had been suspended.

79.     HHOC knew these collection activities were unlawful because: (a) it knew that HHPC lacked required rental licensing; (b) it received multiple notices of violation; (c) it knew HHPC's temporary license was suspended; (d) it was notified of habitability issues by DPIE; and (e) it voluntarily dismissed over 130 rent actions when challenged.

80.     Each unlawful collection attempt constituted a separate violation of the MCDCA.

81.     Violations of the MCDCA constitute per se violations of the Maryland Consumer Protection Act. Md. Code Ann., Com. Law § 13-301(14)(iii).

82.     As a direct and proximate result of HHOC's violations of the MCDCA, Ms. Hall and class members have suffered and continue to suffer damages.

## COUNT IV
### Negligence by all Defendants

83.     Plaintiff incorporates herein the allegations set forth in paragraphs 1 through 51, above.

84.     Prince George's County Code establishes mandatory licensing and maintenance requirements for multi-family dwellings, including: (a) requiring license to offer and lease multi-family dwelling units (§ 13-181); (b) requiring written application to DPIE ensuring code compliance (§ 13-182); (c) adopting International Property Maintenance Code standards (§ 13-101(a)); and (d) establishing minimum property maintenance standards (§§ 13-119 through 13-127).

85.     These code provisions are designed to protect tenants' health and safety by ensuring that: (a) properties are properly inspected before occupancy; (b) essential systems are maintained in working order; (c) sanitary conditions are preserved; (d) fire safety measures are implemented; and (e) basic habitability standards are met.

86.     Ms. Hall and class members are within the class of persons that these code provisions were enacted to protect.

87.     As the property owner, HHPC had a duty to maintain the property in accordance with the County Code, including obtaining the required licenses and permits to legally operate Heather Hill as a multi-family dwelling business.

88.     As the property manager, HHOC had a duty to properly manage Heather Hill in accordance with the County Code, including abiding by the minimum property maintenance conditions and ensuring safe conditions at the property for tenants.

89.     HHPC and HHOC violated these code provisions by operating Heather Hill without required licensing for over two years, including failing to apply for a license within 30 days of purchase, continuing operations after temporary license was voided, and operating after license suspension. HHPC and HHOC further violated these code provisions by failing to maintain minimum property standards, including providing some tenants with non-functional entry door locks, failing to maintain pest-free conditions, failing to maintain operable cooking facilities for some tenants, and failing to maintain adequate heating and cooling systems for several tenants.

90.     The code violations committed by HHPC and HHOC are evidenced by multiple notices of violation from DPIE, including Notice HOU-16446 (April 11, 2024), Notice HOU-15393 (March 13, 2024), Notice HOU-14764 (February 29, 2024), Notice HOU-6068 (October 6, 2023), Notice HOU-7618 (November 28, 2023), and Notice HOU-7765 (December 1, 2023). Defendants' code violations are further evidenced by failed inspections documenting fire code violations, plumbing failures, electrical hazards, structural defects, and health code violations.

91.     These violations directly caused injuries to Plaintiff and class members including: (a) living in dangerous and unsanitary conditions; (b) exposure to health hazards; (c) loss of use of essential facilities; (d) damage to personal property; (e) medical expenses; and (f) alternative housing costs.

92.     OneWall is vicariously liable for the negligent acts of HHPC and HHOC as the controlling parent company that directed their operations and policies.

93.     As a direct and proximate cause of the wrongful conduct by HHPC and HHOC,

Ms. Hall and the class members have suffered and continue to suffer damages.

**<u>COUNT V</u>**
**Breach of Contract by Defendant HHPC**

94.     Plaintiff incorporates herein the allegations set forth in paragraphs 1 through 51,

above.

95.     Valid and binding lease agreements existed between HHPC and the class

members, including Ms. Hall.

96.     Under Maryland law, every residential lease contains an implied covenant of quiet

enjoyment and implied warranty of habitability.

97.     Section 13-162 of the Prince George's County Code requires residential leases to

contain: (a) an express warranty of habitability; (b) a non-retaliation provision; and (c) an

acknowledgment of rent escrow remedy.

98.     HHPC materially breached the lease agreements entered into prior to January

2025 by:

    (a)  failing to include required provisions in leases omitting express warranty of
    habitability, omitting non-retaliation provisions, and omitting rent escrow
    acknowledgments.

    (b)  Failing to maintain premises in habitable condition by allowing chronic sewage
    backups, failing to repair water leaks, permitting dangerous pest infestations, not
    maintaining essential systems, and ignoring structural hazards.

    (c)  Violating express lease terms regarding maintenance obligations, timely repairs,
    pest control, utilities, and safety measures.

    (d)  Breaching implied covenants by rendering units uninhabitable, interfering with
    quiet enjoyment, failing to make repairs, collecting rent without legal authority,
    and retaliating against complainants.

Attached hereto as Exhibit 1 is a true and correct copy of the lease agreement that Ms. Hall and Defendants ultimately executed on or about January 4, 2023. Upon information and belief, the lease agreement contains the same or substantially similar terms and conditions as those lease agreements between Defendants and the class members.

99.     The breaches committed by HHPC are specifically evidenced by: (a) tenant Juanita Caldwell's experience multiple sewage backups, flooding issues, roach infestation, non-working appliances, and forced relocation to equally uninhabitable unit; (b) tenant Kemba Colvin's chronic plumbing failures, sewage odor issues, unaddressed pest problems, HVAC issues, and ignored maintenance requests; (c) tenant Darlene Johnson's experience with water leaks since 2019, risk of ceiling collapse, bat infestations, and black mold.

100.    HHPC's breaches have rendered units uninhabitable and constructively evicted several tenants by: (a) creating dangerous living conditions; (b) failing to provide essential services; (c) rendering units unusable for their intended purpose; (d) forcing tenants to seek alternative housing; and (e) causing health hazards.

101.    HHPC's breaches were knowing and willful, as demonstrated by systematic failure to make repairs, a pattern of ignoring maintenance requests, continued collection of rent for uninhabitable units, operation without required licensing, and retaliatory actions against complaining tenants.

102.    As a direct result of these breaches, Ms. Hall and the class members have suffered and continue to suffer substantial harm.

<u>**COUNT VI**</u>
**Alternative Theory: Unjust Enrichment against HHPC and OneWall**

103.    Plaintiff incorporates herein the allegations set forth in paragraphs 1 through 51, above.

104.    Ms. Hall pleads this count in the alternative to her breach of contract claim in the event it's determined that the leases entered into between the tenants and Defendant INSERT are unenforceable due to the failure of Defendant INSERT to maintain the proper rental license to lease the units at Heather Hill at the time of entering into the leases.

105.    HHPC and OneWall have been unjustly enriched by collecting rent and fees during periods when: (a) they lacked legal authority to operate Heather Hill; (b) they had no valid rental license; (c) their temporary license was void or suspended; and (d) units were uninhabitable.

106.    HHPC and OneWall have been unjustly enriched by retaining security deposits while: (a) operating without the required license; (b) maintaining uninhabitable conditions; (c) failing to make necessary repairs; and (d) violating lease terms.

107.    HHPC and OneWall have been unjustly enriched by charging tenants fees for: (a) non-functioning amenities; (b) inoperable appliances; (c) unusable facilities; and (d) services not provided.

108.    From April 2022 through January 13, 2025, HHPC has collected and retained substantial sums including monthly rent payments from approximately 459 units, security deposits, late fees, utility charges, amenity fees, and other charges characterized as "additional rent."

109.    These payments conferred a benefit on HHPC, as evidenced by regular rent collection practices, bank deposits, accounting records, lease payment histories, and collection notices to tenants. The benefit was interrelated and flowed between HHPC and OneWall through their integrated corporate structure

110.    HHPC knew they were receiving these benefits while operating without required licensing, violating housing codes, maintaining uninhabitable conditions, failing to provide contracted services, and lacking legal authority to collect rent.

111.    It would be inequitable for HHPC and OneWall to retain these benefits because: (a) they had no legal right to collect rent while unlicensed; (b) they failed to provide habitable housing in exchange; (c) they violated multiple laws and regulations; (d) they misrepresented their legal authority; and (e) they knew conditions were uninhabitable.

112.    The inequitable nature of HHPC's and OneWall's conduct is demonstrated by continuing to demand rent after their license was suspended, filing over 130 illegal failure to pay rent actions,  threatening eviction without legal authority, refusing to make necessary repairs while collecting rent, and retaliating against tenants who complained.

113.    As a result of the wrongful conduct by HHPC and OneWall, Ms. Hall and class members are entitled to restitution of at least a portion of the rent paid during unlicensed periods, security deposits, late fees, other fees and charges, and interest on these amounts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Charlene Hall, individually and on behalf of the Class, respectfully request that the Court enter judgment on the Amended Class Action Complaint, in her favor and against Defendants Heather Hill Property Company LLC, Heather Hill Operating Company LLC, OneWall Communities LLC, as follows:

A.    Declare that: (1) HHPC's and OneWall's operation of Heather Hill without valid licensing was unlawful; (2) HHPC had no legal authority to involuntarily collect rent during unlicensed periods; (3) HHPC's lease agreements violated Maryland law; and (4) HHOC's debt collection practices violated the CDCA.

B.      Award Ms. Hall and the Class compensatory damages for the harm they suffered as a result of Defendants' conduct, in a fair and reasonable amount to be determined at trial;

C.      Award Ms. Hall and the Class punitive damages against Defendants, in an amount that sufficiently punishes, penalizes, and/or deters Defendants' unlawful conduct;

D.      Award Ms. Hall and the Class pre-judgment interest and post-judgment interest;

E.      Award Ms. Hall and the Class the costs and fees they incurred in connection with this action, including reasonable attorneys' fees;

F.      Enter a permanent injunction against Defendants, requiring that they:

    (1) Complete within 30 days: (i) repair of all plumbing systems causing sewage backups; (ii) installation of functioning fire safety equipment; and (iii) repair of all non-functioning HVAC systems.

    (2) Implement and maintain: (i) regular property inspections; (ii) documentation of all maintenance requests and responses; and (iii) a compliance monitoring system.

    (3) Provide to all tenants: (i) written notice of their rights under Maryland law; (ii) access to maintenance records and at least a 12-month history of their maintenance requests submissions; (iii) regular updates on repair progress; and (iv) clear procedures for reporting issues.

G.      Order Defendants to: (1) establish an escrow fund for repairs; (2) fund relocation assistance for displaced tenants; and (3) reimburse tenants' alternative housing costs for those tenants who have been impacted due to Defendants' wrongful conduct; and

H.      Grant Ms. Hall and the Class such other relief as the Court deems just and proper, including additional injunctive and declaratory relief as may be required in the interest of justice.

\\

\\

\\

\\

Dated: February 18, 2025

*/s/ Jordan D. Howlette*
JORDAN D. HOWLETTE
D. Md. No.: 21634
JD Howlette Law | Justly Prudent
1140 3rd St. NE, Suite 2180
Washington, DC 20002
Tel: (202) 921-6005
Fax: (202) 921-7102
jordan@justlyprudent.com
*Counsel for Plaintiff*