IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHARLENE HALL,

    Plaintiff,

    v.

HEATHER HILL PROPERTY
COMPANY LLC, *et al.*,

    Defendants.

_____/

Case No. 1:25-cv-00238-ABA

## <u>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>

Plaintiff Charlene Hall ("Ms. Hall"), individually and on behalf of all others similarly situated, hereby opposes Defendants' Motion to Dismiss the Amended Complaint (ECF No. 17). Defendants' motion is based on several arguments, all of which are without merit and fail to provide a valid basis for dismissal. The Amended Complaint sets forth valid claims for relief and adequately states causes of action against Defendants. Furthermore, Ms. Hall provided sufficient factual allegations for each claim that give rise to a plausible right to relief, and there are no legal grounds to dismiss the Complaint at this stage of the proceedings.

Accordingly, and as further explained below, Ms. Hall respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety.

## <u>TABLE OF CONTENTS</u>

**Page**

Table of Authorities...................................................................................................4

I.    Background.................................................................................................5

    A.   Factual Background......................................................................5

    B.   Procedural History........................................................................8

II.   Standard of Review.................................................................................9

    A.   Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6)................9

III.  Discussion.............................................................................................10

    A.   Defendants' motion to dismiss the Maryland Consumer Protection Act claim (i.e., Count I) should be denied because Ms. Hall alleged sufficient facts to state a plausible claim.........................................................11

         *1.*  *Ms. Hall properly alleged that Defendants' collection of rent during unlicensed periods violates the Maryland Consumer Protection Act*..........13

         *2.*  *Ms. Hall's post-contract CPA allegations are proper under Maryland law*................................................................14

    B.   Defendants' motion to dismiss the breach of implied warranty of habitability claim (i.e., Count II) should be denied because Ms. Hall properly alleged notice, opportunity to repair, and causation............16

         *1.*  *Ms. Hall sufficiently alleged Defendants had notice of the defective conditions at Heather Hill*..........................................17

         *2.*  *Ms. Hall sufficiently alleged Defendants had a reasonable opportunity to make repairs*.................................................18

         *3.*  *Ms. Hall sufficiently alleged facts to establish at least an inference of causation*....................................................19

    C.   Defendants' motion to dismiss the Maryland Consumer Debt Collection Act claim (i.e., Count III) should be denied because Defendant Operating Company is a "collector" within the meaning of the statute and its collection activities violated the CDCA..........................................20

D.    The Amended Complaint states a plausible claim for negligence against Defendants.................................................................................................. 23

E.    Ms. Hall's relief requests are proper under Maryland law, and therefore, should not be dismissed.................................................................................. 25

IV.    Conclusion................................................................................................................. 26

# TABLE OF AUTHORITIES

Page(s)

***US SUPREME COURT CASES***

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 9, 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).......................................................... 9

***FEDERAL CASES***

*Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370 (4th Cir. 2022) ................................. 20

*Hall v. DirecTV, LLC*, 846 F.3d 757 (4th Cir. 2017) ......................................................... 9

*Ramsay v. Sawyer Prop. Mgmt. of Md., LLC*, 948 F. Supp. 2d 525 (D. Md. 2013)...................... 21

*Young-Bey v. S. Mgmt. Corp., Inc.*, 2018 WL 4922349 (D. Md. Oct. 10, 2018) ........................ 22

***STATE CASES***

*Aleti v. Metro. Baltimore, LLC*, 251 Md. App. 482, 254 A.3d 533 (Md. App. Ct. 2021) ............. 12

*Assanah-Carroll v. Law Offices of Edward J. Maher, P.C.*,
    480 Md. 394, 281 A.3d 100, 281 A.3d 72 (Md. 2022) ...........................................11, 13, 23

*Benik v. Hatcher*, 358 Md. 507, 750 A.2d 10 (Md. 2000) ............................................. 16

*Old Republic Ins. Co. v. Gordon*, 228 Md. App. 1, 137 A.3d 237 (Md. App. Ct. 2016) ............. 21

*Richwind Joint Venture 4 v. Brunson*, 335 Md. 661, 645 A.2d 1147 (Md. 1994)....... 14, 15, 17, 24

*Smith v. Westminster Management, LLC*,
    257 Md. App. 336, 290 A.3d 1161 (Md. App. Ct. 2023) ................................. 12, 14, 15, 22

*Stein v. Overlook Joint Venture*, 246 Md. 75, 227 A.2d 226 (Md. 1967)...................................... 24

***FEDERAL STATUTES***

28 U.S.C. § 1332................................................................................................... 8

Title 28 U.S.C. § 1441 ......................................................................................... 8

Title 28 U.S.C. § 1446 ......................................................................................... 8

***STATE STATUTES***

Md. Code Ann., Com. L. § 13-301 ......................................................................... 14, 15

Md. Code Ann., Com. L. § 13-303 ......................................................................... 14

Md. Code Ann., Com. L. § 14-201 ......................................................................... 20, 21

Md. Code Ann., Com. L. § 14-202 ......................................................................... 22

Md. Code Ann., Real Prop. § 8-208 ............................................................11, 12, 19

I.    **BACKGROUND**

A.  **Relevant Factual Background**

Ms. Hall is a tenant in Heather Hill Apartments ("Heather Hill"), a 459-unit apartment complex located in Temple Hills, Maryland, which is owned, operated, and managed by Defendants. (*See* ECF No. 14, Plaintiff's Amended Complaint ("Am. Compl."), ¶¶ 1, 9-12). From April 2022 through January 13, 2025, Defendants operated Heather Hill without the required multi-family dwelling license from Prince George's County, in violation of local housing codes and Maryland law. (*Id.* ¶ 2). Despite lacking proper licensure, Defendants continued to collect rent from tenants while failing to maintain the property in habitable condition. (*Id.*).

Defendants operate as a joint enterprise with respect to the operations of Heather Hill. (*Id.* ¶ 13). OneWall Communities, LLC ("Defendant OneWall") acquired the property and created Heather Hill Property Company, LLC ("Defendant Property Company") and Heather Hill Operating Company, LLC ("Defendant Operating Company") as subsidiary instrumentalities. (*Id.*). Defendant Property Company holds title to the property but has delegated operational control to Defendant Operating Company as master lessee. (*Id.*). Defendant Operating Company collects rent and fees on behalf of Defendant OneWall and Defendant Property Company. (*Id.*). All three entities share officers and resources, and this integrated structure makes each Defendant liable for the acts of the others in operating Heather Hill. (*Id.* ¶¶ 13-14).

Defendant OneWall purchased Heather Hill in March 2022. (*Id.* ¶ 16). At some point shortly thereafter, Defendant OneWall transferred legal title to Defendant Property Company. (*Id.*). Under Section 13-186(b) of the Prince George's County Code, Defendants had 30 days following purchase to apply for a multi-family dwelling license. (*Id.* ¶ 18). However, Defendants

failed to apply for or obtain the required license for approximately 25 months, from April 2022 until May 7, 2024. (*Id.* ¶ 19). During this unlicensed period, Defendants advertised and showed apartments to prospective tenants, entered into new lease agreements, renewed existing leases, collected rent and other fees, assessed late fees, and filed over 130 failure-to-pay rent actions against tenants. (*Id.* ¶ 20).

When Defendants finally applied for a temporary license on May 7, 2024, it was void on its face due to numerous outstanding violations. (*Id.* ¶ 21). On August 4, 2024, Heather Hill failed a Fire Safety Inspection, leading to suspension of the temporary license on August 5, 2024. (*Id.* ¶ 22). Despite lacking valid licensing, Defendants continued to collect rent and threaten tenants with eviction. (*Id.* ¶ 23).

In addition to operating without a license, Defendants have allowed Heather Hill to deteriorate into deplorable conditions, with widespread issues including sewage backups, water leaks, mold, pest infestations, and numerous fire and safety code violations. (*Id.* ¶ 3). These habitability issues affect the entire Heather Hill community. (*Id.* ¶¶ 24-33).

Ms. Hall has been a tenant at Heather Hill since 2017. (*Id.* ¶ 37). Her apartment has suffered from severe structural issues, including improperly installed flooring that has caused her to fall, defective interior doors, broken patio doors creating a security risk, and missing fire extinguishers. (*Id.* ¶ 38). Ms. Hall has experienced persistent water damage and mold issues, including recurring leaks through bathroom exhaust fans, water bubble formations in the kitchen ceiling drywall, water damage to closet ceilings and walls, and recurring black mold growth that Defendants merely painted over. (*Id.* ¶ 39). Her unit has lacked essential services, including heat since at least November 29, 2023, persistent periods without hot water, and various non-

functioning appliances. (*Id.* ¶ 40). Her apartment has also been plagued by pest infestations. (*Id.* ¶ 41).

These uninhabitable conditions have caused Ms. Hall and her family to suffer serious health issues, including respiratory problems, severe headaches, ear infections, chronic coughing, nasal and sinus congestion, body rashes, dizziness, and nosebleeds requiring specialized care. (*Id.* ¶ 42). Ms. Hall's doctors have confirmed her health issues are linked to the mold in her unit. (*Id.* ¶ 43).

Despite hundreds of maintenance requests, Defendants have failed to properly address these issues. (*Id.* ¶ 44). Defendants persistently ignore or delay responses to Ms. Hall's maintenance tickets. (*Id.*). When Defendants did respond to Ms. Hall's complaints, their actions were inadequate. (*Id.* ¶ 45). For example, they painted over black mold instead of remediating it, refused to open walls to address water leaks, and made superficial repairs that failed to resolve the underlying issues. (*Id.*).

### B. Procedural History

1.     On December 13, 2024, Ms. Hall, individually and on behalf of all others similarly situated, commenced this action in the Circuit Court for Prince George's County, Maryland, seeking redress for the unhabitable conditions in which Heather Hill's tenants have been forced to live as a result of Defendants' conduct and omissions. (ECF No. 1-1).

2.     On January 27, 2025, Defendants removed this action to the United States District Court for the District of Maryland by filing a Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (ECF No. 1).

3.     On February 3, 2025, Defendants moved to dismiss the Complaint under Rule 12(b)(6). (ECF No. 11).

4.      On February 18, 2025, Ms. Hall filed an Amended Complaint addressing the issues raised in Defendants' Motion to Dismiss. (ECF No. 14).

5.      On March 4, 2025, Defendants moved to dismiss Ms. Hall's Amended Complaint. (ECF No. 17).

## II.    <u>LEGAL STANDARD</u>

### A.  Motion to Dismiss for Failure to State a Claim Pursuant to Rule 12(b)(6)

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), it is well established that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added)). A claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Against this backdrop, the Fourth Circuit has made clear that a complaint "need only give the defendant fair notice of what the claim is and the grounds on which it rests." *Hall v. DirecTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) (internal quotation marks omitted); *see also Twombly*, 550 U.S. at 556 ("Asking for plausible grounds to infer [a right to relief] does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the right to relief].").

When considering a motion to dismiss under Rule 12(b)(6), the court must accept all factual statements in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Iqbal*, 556 U.S. at 678. A complaint is properly dismissed only where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. And while legal conclusions can provide the

framework of a complaint, they must be supported by factual allegations to satisfy the pleading requirements under Rule 8 and to enjoy any weight or consideration by the court. *Iqbal*, 556 U.S. at 679.

### III.    ARGUMENT

Defendants' motion to dismiss the Amended Complaint fails on all counts. First, Defendants incorrectly argue that Ms. Hall's Maryland Consumer Protection Act (MCPA) claim must be dismissed with respect to allegations regarding rent collection during unlicensed periods and actions occurring during the lease term. Contrary to Defendants' assertions, Maryland law does not permit landlords to collect rent while operating without required licensing, and the MCPA does apply to Defendants' unfair and deceptive practices during the lease term, particularly when those practices violate the Maryland Consumer Debt Collection Act.

Second, Defendants' attempt to dismiss Ms. Hall's breach of implied warranty of habitability claim ignores the Amended Complaint's detailed factual allegations regarding notice of defective conditions, Defendants' failure to make repairs within a reasonable time, and the causal connection between the habitability issues and Ms. Hall's injuries.

Third, Defendants wrongly assert that the Maryland Consumer Debt Collection Act claim should be dismissed because Defendant Operating Company was not a "collector" within the meaning of the statute; however, Maryland courts have consistently held that property management companies that collect debts on behalf of owners are subject to the CDCA.

Fourth, Defendants' argument that the negligence claim should be dismissed due to insufficient pleading of notice, opportunity to cure, and proximate cause disregards the specific factual allegations in the Amended Complaint, and their contention that the negligence claim is duplicative of the breach of contract claim fails because Defendants owed Ms. Hall a duty of

care independent of their contractual obligations. Finally, Ms. Hall's requests for relief are properly supported by the allegations in the Amended Complaint and are permitted under Maryland law.

For these reasons, and as further explained below, the Court should deny Defendants' motion to dismiss in its entirety.

### A. Defendants' motion to dismiss the Maryland Consumer Protection Act claim (i.e., Count I) should be denied because Ms. Hall alleged sufficient facts to state a plausible claim.

Defendants argue that Count I of the Amended Complaint must be dismissed because a claim under the Maryland Consumer Protection Act ("MCPA") cannot be maintained based on wrongful actions that occurred after signing a lease. But under Maryland law, it is well established that a tenant may "bring a private action under the MCPA where a landlord violates a local rental license law, and the tenant can prove that he or she suffered actual injury or loss in connection with the unlicensed status of the property." *Assanah-Carroll v. L. Offs. of Edward J. Maher, P.C.*, 480 Md. 394, 415, 281 A.3d 72, 84 (Md. 2022).

Defendants' threshold argument that Md. Code Ann., Real Prop. § 8-208(d)(3) "only prohibits actual provisions in residential leases, not a property manager's conduct" is directly contradicted by both the plain text of the statute and Maryland case law. While subsection (d) does prohibit certain lease provisions, subsection (g) explicitly provides a remedy when landlords attempt to enforce such provisions. Real Prop. § 8-208(g) states unambiguously:

(1) Any lease provision which is prohibited by terms of this section *shall be unenforceable by the landlord*.

(2) If the landlord includes in any lease a provision prohibited by this section or made unenforceable by § 8-105 of this title or § 8-203 of this subtitle, at any time subsequent to July 1, 1975, and tenders a lease containing such a provision or attempts to enforce or makes known to the tenant an intent to enforce any such provision, *the tenant may*

*recover any actual damages incurred as a reason thereof, including reasonable attorney's fees.*

(emphasis added).

As the Maryland Appellate Court explained in *Smith v. Westminster Management, LLC*, 257 Md. App. 336, 361, 290 A.3d 1161, 1176 (Md. App. Ct. 2023): "the statute means what it says: landlords may not include certain provisions in their leases (subsection (d)) and, if a landlord includes any of the proscribed terms in a lease and then attempts to enforce them, tenants can sue their landlords and recover damages (subsection (g))." The court explicitly held that "§ 8-208(g) establishes a private cause of action for tenants harmed by a landlord's violation of the statute." *Id.*; *see also Aleti v. Metro. Baltimore, LLC*, 251 Md. App. 482, 504, 254 A.3d 533, 546 (Md. App. Ct. 2021), *aff'd*, 479 Md. 696, 279 A.3d 905 (Md. 2022) ("If a statute's language provides a right to a particular class of persons, there is a strong inference that the legislature intended the statute to carry an implied cause of action.").

In the present case, Ms. Hall alleged that Defendants engaged in conduct that effectively enforced or attempted to enforce prohibited lease provisions, including charging excessive late fees and fees not authorized by the courts while operating without a valid license. (*See* Am. Compl., ¶¶ 20, 23, 56, 77, and 78). These allegations are sufficient to state a claim under § 8-208(g).

The Court should reject Defendants' invitation to ignore the remedial provision of § 8-208(g), just as the Maryland Appellate Court did in *Smith* when it stated: "We decline [the landlord defendant]'s invitation to pretend that Real Prop. § 8-208(g) does not exist." *Smith*, 257 Md. App. at 361, 290 A.3d at 1176.

### 1. Ms. Hall properly alleged that Defendants' collection of rent during unlicensed periods violates the Maryland Consumer Protection Act.

Defendants argue that Ms. Hall's MCPA claim based on the collection of rent during unlicensed periods must be dismissed. This argument fails for multiple reasons. First, Defendants' unlicensed operation of Heather Hill violates the Prince George's County Code, which provides that:

> No person shall conduct or operate or cause to be operated either as owner, lessee, agent, or in any other capacity within the County any single-family rental facility or any multifamily rental facility . . . without having first obtained a license as provided in this Division.

Prince George's County Code of Ordinances, § 13-181(a). By operating without the required license and collecting rent during this unlicensed period, Defendants engaged in a trade practice prohibited by law, in violation of the MCPA.

Second, Defendants misinterpret Maryland case law regarding rent collection during unlicensed periods. While Defendants rely heavily on *Assanah-Carroll v. Law Offices of Edward J. Maher, P.C.*, 480 Md. 394, 281 A.3d 72 (Md. 2022), and *Aleti v. Metro. Balt., LLC*, 479 Md. 696, 254 A.3d 533 (2022), they mischaracterize the holdings of these cases. In *Assanah-Carroll*, the Maryland Supreme Court held that "a landlord 'may not utilize the courts' . . . to recover unpaid rent that is attributable to an unlicensed period." *Assanah-Carroll*, 480 Md. at 440, 281 A.3d at 100 (2022). The court distinguished the filing of suit to collect unpaid rent while unlicensed from the demand or receipt of rent while unlicensed, but it did not hold that all rent collection during unlicensed periods is permissible under the MCPA. The court did not hold that landlords can engage in any and all rent collection activities while unlicensed. Moreover, the *Smith* court explicitly held that the landlord defendant was a "collector" for the purposes of the Maryland Consumer Debt Collection Act, and that "[t]he Maryland Consumer Debt Collection

Act applies to [defendant]'s efforts to require appellants to pay agents' fees, summons fees, and filing fees" in the timeframe set out in the complaint. *Smith*, 257 Md. App. at 380. 290 A.3d at 1187.

Additionally, Ms. Hall's MCPA allegations are not limited to the mere collection of rent during unlicensed periods. She also alleged that Defendants misrepresented their legal authority to collect rent and fees, made false and misleading statements about their right to impose late fees, and engaged in unfair and deceptive practices by refusing to make necessary repairs while continuing to collect rent, maintaining deplorable conditions, filing baseless court actions, and threatening eviction without legal authority. (*See* Am. Compl. ¶¶ 56-57). These allegations are sufficient to state a claim under the MCPA, which prohibits "unfair, deceptive, and abusive trade practices" in the rental of consumer realty. Md. Code Ann., Com. Law §§ 13-303(1), (2), and (5).[1]

Ms. Hall alleged facts that, if true, would establish that Defendants engaged in these prohibited practices, making dismissal inappropriate at this stage.

### 2. Ms. Hall's post-contract CPA allegations are proper under Maryland law.

Defendants further argue that Ms. Hall's MCPA claim must be dismissed to the extent it is based on Defendants' acts allegedly occurring during the lease term. Defendants rely on *Richwind Joint Venture 4 v. Brunson*, 335 Md. 661, 645 A.2d 1147 (Md. 1994), in which the

---

[1] The statute defines such practices to include: (1) "[f]alse or misleading oral or written statements that have the capacity, tendency, or effect of deceiving or misleading consumers"; (2) "[f]ailure to state a material fact if the failure deceives or tends to deceive"; (3) "[r]epresentations that consumer realty has a characteristic that it does not have"; (4) "[f]ailure to state a material fact if the failure deceives or tends to deceive"; (5) "[a]dvertising consumer realty without intent to sell, lease, or rent it as advertised"; and (6) "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the promotion or sale of consumer realty." *See* Md. Code Ann., Com. Law § 13-301.

Maryland Supreme Court held that "[a] landlord's acts or omissions during the term of the lease are fully regulated by comprehensive landlord and tenant statutes as well as the common law," not the CPA. *Id.* at 683. However, Defendants misapply *Richwind* to the facts of this case. *Richwind* and its progeny involved claims for lead-based paint poisoning where tenants alleged that landlords had violated the MCPA by misrepresenting the condition of the leased premises. The Maryland Supreme Court held that such misrepresentations must occur at the inception of the lease to be actionable under the MCPA.

Here, Ms. Hall is not alleging that Defendants misrepresented the condition of her unit when she initially rented it. Rather, she alleges that Defendants violated the MCPA by engaging in a pattern of unfair and deceptive practices throughout their operation of Heather Hill, including operating without required licenses, collecting unauthorized fees, and making false representations about their legal rights. These allegations differ significantly from those in *Richwind*. Moreover, as recognized in *Smith v. Westminster Management, LLC*, a violation of the Maryland Consumer Debt Collection Act is a *per se* violation of the Maryland Consumer Protection Act. *See Smith*, 257 Md. App. at 382, 290 A.3d at 1188; *see also* Md. Code Ann., Com. Law § 13-301(14)(iii). Ms. Hall alleged that Defendants violated the Maryland Consumer Debt Collection Act by attempting to collect debts they knew they had no right to collect, which constitutes a violation of the MCPA regardless of when it occurred during the lease term. (*See* Am. Compl. ¶¶20, 23).

Additionally, the Maryland Appellate Court recognized in *Smith* that the MCPA applies to the "subsequent performance of a merchant with respect to an agreement of sale, lease, or rental." *Smith*, 257 Md. App. at 382, 290 A.3d at 1189. This is consistent with the statutory language of Md. Code Ann., Com. Law § 13-301(9), which explicitly prohibits "deception,

fraud, false pretense, false premise, misrepresentation, or knowing . . . omission of any material fact with the intent that a consumer rely on the same in connection with... [t]he subsequent performance of a merchant with respect to an agreement of sale, lease, or rental."

Accordingly, Ms. Hall's MCPA claim based on Defendants' conduct during the lease term is proper under Maryland law and should not be dismissed.

**B.  Defendants' motion to dismiss the breach of implied warranty of habitability claim (i.e., Count II) should be denied because Ms. Hall properly alleged notice, opportunity to repair, and causation.**

Defendants argue that Ms. Hall's implied warranty of habitability claim should be dismissed because she has not adequately alleged notice or a reasonable opportunity for Defendants to repair the alleged defects. This argument disregards the detailed factual allegations in the Amended Complaint. To state a claim for breach of implied warranty of habitability under Maryland law, a plaintiff must allege: (1) that at the inception of the lease, the premises contained a defective condition in violation of applicable housing codes; (2) that the landlord had knowledge, either constructive or actual, of the defective condition at the time of the lease; (3) that the landlord failed to disclose this material condition to the tenant; (4) that the defective condition had the capacity, tendency, or effect of misleading the tenant; and (5) that the plaintiff suffered injury as a direct and proximate result of the defective condition. *See Benik v. Hatcher*, 358 Md. 507, 530-533, 750 A.2d 10, 22-24 (Md. 2000) (holding that "to prove a violation of the CPA premised on the breach of the implied warranty of habitability, it must be shown that, at the inception of the lease, the landlord made material misstatements or omissions, which either had the tendency to or, in fact, did, mislead the tenant").

1. ***Ms. Hall sufficiently alleged Defendants had notice of the defective conditions at Heather Hill.***

Under Maryland law, a landlord must have notice of defective conditions to be liable under the implied warranty of habitability. *Richwind*, 335 Md. at 673, 645 A.2d at 1153. However, at the motion to dismiss stage, Ms. Hall need only plead sufficient facts to make it plausible that the Defendants had such notice.

Here, Ms. Hall alleged that Defendants had "actual notice" of the defective conditions in her apartment and throughout Heather Hill. (*See* Am. Compl. ¶ 69). Specifically, she alleged that she submitted "hundreds of maintenance requests" regarding the issues in her apartment, (*id*. ¶ 44), and that other tenants submitted numerous maintenance requests regarding similar issues, (*id*. ¶¶ 25-28, and 30-31). Defendants claim these allegations lack specificity as to "when the notice was given, to whom it was given, how it was given, where it was given, and/or what was said." However, this level of detail is not required at the pleading stage. Ms. Hall alleged that she submitted "hundreds of maintenance requests" to Defendants, which is sufficient to establish that Defendants had notice of the conditions. The specific dates, methods, and content of each maintenance request are matters for discovery, not pleading.

Moreover, Ms. Hall alleged that Defendants "persistently ignore or delay responses to Ms. Hall's maintenance tickets" and "provided misleading information to Ms. Hall about the causes of certain problems." (*Id*. ¶ 44). These allegations clearly indicate that Defendants received and were aware of Ms. Hall's maintenance requests. Additionally, Ms. Hall alleged that Prince George's County inspections documented numerous violations affecting tenant health and safety, including mold growth, inoperable fire safety systems, missing fire extinguishers, non-functioning heating and cooling systems, and structural issues. (*Id*. ¶ 29). These inspections and

violations provide further support for the allegation that Defendants had notice of the habitability issues at Heather Hill.

Taken together, these allegations are more than sufficient to plausibly allege that Defendants had notice of the defective conditions in Ms. Hall's apartment and throughout Heather Hill.

### 2. Ms. Hall sufficiently alleged Defendants had a reasonable opportunity to make repairs.

Ms. Hall adequately alleged that Defendants had a reasonable opportunity to repair the defective conditions but failed to do so. The Amended Complaint states that "[d]espite notice, [Defendant Property Company] and [Defendant Operating Company] failed to repair these conditions within a reasonable time or at all." (Am. Compl. ¶ 70). The Amended Complaint further details Defendants' pattern of failing to properly address maintenance issues, including:

a) Closing maintenance tickets without completing repairs;

b) Sending unqualified staff to address complex repairs that require licensed professionals;

c) Making temporary patches rather than permanent repairs;

d) Regularly ignoring follow-up requests made by tenants; and

e) Commonly requiring multiple complaints before taking any action. (*Id*. ¶ 31).

Ms. Hall also alleged specific examples of Defendants' inadequate responses to her maintenance requests, such as painting over black mold instead of remediating it, refusing to open walls to address water leaks, and making superficial repairs that failed to resolve issues. (*Id*. ¶ 45). These allegations make it plausible that Defendants had a reasonable opportunity to repair the defective conditions but failed to do so effectively. The fact that some of the conditions persisted for years despite Ms. Hall's repeated requests for repairs further supports this

conclusion. For example, Ms. Hall alleges that she has been without heat since at least November 29, 2023, despite reporting this issue to Defendants. (*Id.* ¶ 40).

Defendants' argument that Ms. Hall failed to allege the length of time following notice within which they failed to correct the conditions ignores these detailed allegations. The Amended Complaint clearly alleges an ongoing pattern of failure to address maintenance issues despite repeated requests over a lengthy period.

### 3. *Ms. Hall sufficiently alleged facts to establish at least an inference of causation.*

Defendants also contend that Ms. Hall's habitability claim fails because she has not adequately alleged causation for some of the defective conditions, such as "broken patio doors." This argument mischaracterizes the nature of the implied warranty of habitability. The implied warranty of habitability imposes a duty on landlords to maintain residential premises in a habitable condition, regardless of who initially caused a particular defect. While it is a defense to a habitability claim if the tenant "caused the asserted defects or conditions," Md. Code Ann., Real Prop. § 8-212(h)(1), this is an affirmative defense that Defendants bear the burden of proving. At the pleading stage, Ms. Hall is not required to negate all possible defenses.

Moreover, many of the habitability issues alleged in the Complaint are clearly not attributable to tenant conduct, such as: (1) recurring sewage backups in sinks, toilets, and bathtubs (Am. Compl. ¶ 25); (2) water leaks through bathroom exhaust fans and ceiling damage (*Id.* ¶¶ 26 and 39); (3) widespread mold growth, including black mold (*Id.* ¶¶ 29 and 39); (4) pest infestations throughout the property (*Id.* ¶¶ 27 and 28); (5) non-functioning heating and cooling systems (*Id.* ¶¶ 30 and 40); and (6) yellow liquid seeping through bathroom ceilings (*Id.* ¶ 39). These issues are typically caused by building-wide structural or mechanical problems that are the landlord's responsibility to address, not the result of tenant actions.

Furthermore, Ms. Hall alleged that her doctors have directly linked her health issues, including respiratory problems, headaches, and skin conditions, to the mold in her apartment. (*Id.* ¶¶ 42 and 43). This establishes a clear causal connection between the habitability issues and the harm she has suffered.

Accordingly, Ms. Hall sufficiently alleged causation for her implied warranty of habitability claim, and Defendants' motion to dismiss this count should be denied.

**C. Defendants' motion to dismiss the Maryland Consumer Debt Collection Act claim (i.e., Count III) should be denied because Defendant Operating Company is a "collector" within the meaning of the statute and its collection activities violated the CDCA.**

Defendants argue that Count III should be dismissed because Defendant Operating Company is not a "collector" under the Maryland Consumer Debt Collection Act ("CDCA") and therefore is not subject to the CDCA. This argument is contrary to both the plain language of the statute and binding precedent. The CDCA defines "collector" as "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction." Md. Code Ann., Com. Law § 14-201(b). The statute further defines "person" to include "an individual, corporation, business trust, statutory trust, estate, trust, partnership, association, two or more persons having a joint or common interest, or any other legal or commercial entity." Md. Code Ann., Com. Law § 14-201(d).

Defendants' argument that entities collecting their own debts are not "collectors" under the CDCA has been rejected by both Maryland courts and the Fourth Circuit. In *Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 375 (4th Cir. 2022), the Fourth Circuit explained:

> The MCDCA broadly defines a 'collector' as 'a person collecting or attempting to collect an alleged debt arising out of a consumer transaction.' Md. Code Ann., Com. Law § 14-201(b). Here there is no dispute that [the landlord defendant] is a person, as the MCDCA

defines 'person' to include 'an individual, corporation, business trust, statutory trust, estate, trust, partnership, association, two or more persons having a joint or common interest, or any other legal or commercial entity.' *Id*. § 14-201(d). Nor is there any dispute that plaintiffs' debt arose out of a consumer transaction, which the statute defines as 'any transaction involving a person seeking or acquiring real or personal property, services, money, or credit for personal, family, or household purposes.' *Id*. § 14-201(c). And it is plain that, by collecting borrowers' monthly mortgage payments, [the landlord defendant] is collecting a debt. Each piece of the statutory puzzle thus fits together: [the landlord defendant] counts as a 'collector' under the MCDCA.

The same analysis applies to Defendant Operating Company in this case. It is indisputably a "person" under § 14-201(d) as a limited liability company. The debts it collected arose out of archetypical consumer transactions, namely, paying rent for residential apartments. And by collecting rent and fees from tenants, it was collecting a debt. As the Fourth Circuit explained, "[e]ach piece of the statutory puzzle thus fits together" to establish that Defendant Operating Company is a "collector" under the CDCA.

Defendants' reliance on *Old Republic Ins. Co. v. Gordon*, 228 Md. App. 1, 137 A.3d 237 (Md. App. Ct. 2016), and *Ramsay v. Sawyer Prop. Mgmt. of Md., LLC*, 948 F. Supp. 2d 525 (D. Md. 2013), is misplaced. As the Maryland Appellate Court noted in *Smith v. Westminster Management, LLC*, the court's holding in *Old Republic* has nothing to do with the CDCA, and in *Ramsay*, the court expressly declined to address plaintiff's state law claims because the "state law claims [were] not sufficiently tied to questions of federal policy such that exercising supplemental jurisdiction is appropriate." *Ramsay*, 948 F. Supp. 2d at 537. Unlike the defendants in those cases, Defendant Operating Company is not merely collecting its own debts. Rather, as alleged in the Amended Complaint, Defendant Operating Company acts as a collector for Defendant Property Company and Defendant OneWall. The Amended Complaint specifically alleges that "[Defendant Property Company] and [Defendant Operating Company] executed a Tenant/Landlord Subordination and Assignment Agreement, whereby [Defendant Property

Company] leased Heather Hill and all other interests in Heather Hill to [Defendant Operating Company], and [Defendant Operating Company] assigned its interests in all leases and tenant rents to HHPC." (Am. Compl. ¶ 17). This arrangement demonstrates that Defendant Operating Company was collecting debts owed to another entity.

Defendant Operating Company's status as a property manager does not exempt it from the CDCA's licensing requirements. The cases cited by Defendants, including *Young-Bey v. S. Mgmt. Corp., Inc.*, No. 18-cv-2331, 2018 WL 4922349 (D. Md. Oct. 10, 2018), and *Ramsay v. Sawyer Prop. Mgmt. of Maryland, LLC*,, are distinguishable because they involved property management companies collecting rent owed directly to them. Here, the Amended Complaint alleges that Defendant Operating Company was collecting rent on behalf of separate legal entities. But more importantly, the Maryland Appellate Court made clear that "*Old Republic has nothing to do with the Maryland Consumer Debt Collection Act*" *Smith,* 257 Md. App. at 376, 290 A.3d at 1185.

Notably, Ms. Hall alleged that Defendant Operating Company violated the CDCA by collecting rent during periods when it knew that Defendants lacked the legal authority to collect such payments due to the absence of required licensing. Specifically, the Amended Complaint alleges that "[Defendant Operating Company] knew these collection activities were unlawful because: (a) it knew that HHPC lacked required rental licensing; (b) it received multiple notices of violation; (c) it knew HHPC's temporary license was suspended; (d) it was notified of habitability issues by DPIE; and (e) it voluntarily dismissed over 130 rent actions when challenged." (Am. Compl. ¶ 79). The CDCA prohibits collectors from collecting or attempting to collect a consumer debt with knowledge that the right to collect the consumer debt does not exist. Md. Code Ann., Com. Law § 14-202(8). Contrary to Defendants' assertion, Maryland law

does not permit landlords to collect rent when operating without the required license. The Maryland Supreme Court has held that a landlord "may not utilize the courts" to collect unpaid rent without the requisite license. *Assanah-Carroll* 480 Md. at 440, 281 A.3d at 99. This prohibition extends to all collection efforts by unlicensed entities.

Finally, Defendant Operating Company's collection activities during periods of alleged uninhabitable conditions also violated the CDCA. Ms. Hall alleged that Defendant Operating Company continued to collect rent despite knowledge that the property failed to meet basic habitability standards. (*See* Am. Compl. ¶ 77(a)). While Defendants argue that Maryland's habitability statute merely permits tenants to refuse to pay rent or bring rent escrow actions, the statute does not authorize landlords to attempt to collect rent for uninhabitable units. When a property is uninhabitable, the landlord's right to collect rent is compromised, and efforts to collect such rent violate the CDCA.

Accordingly, Defendants' motion to dismiss Count III of the Amended Complaint should be denied.

### D.  The Amended Complaint states a plausible claim for negligence against Defendants.

Defendants seek dismissal of Count IV (Negligence) largely for the same reasons they seek dismissal of Count II (Breach of Implied Warranty of Habitability). With respect to Defendants' contentions regarding the lack of allegations to establish notice, opportunity to cure, and proximate cause, the Court should allow Ms. Hall's negligence claim to survive dismissal for the same reasons discussed above. With respect to Defendants' contention that the negligence claim is barred because it is duplicative to Ms. Hall's contract claim, the argument fails for multiple reasons. While there may be some overlap between the factual allegations supporting these claims, they are distinct legal theories with different elements and remedies.

A negligence claim is not barred simply because the parties have a contractual relationship. Rather, a plaintiff may pursue a negligence claim alongside a breach of contract claim when the defendant owes a duty of care independent of the contractual relationship. Here, Defendants owed Ms. Hall a duty of care independent of their contractual obligations under the lease. This duty arises from Defendants' status as landlords and property managers, as well as from statutory and regulatory requirements governing residential properties.

The Maryland Supreme Court has recognized that landlords have a duty to maintain their properties in a safe and habitable condition, regardless of the specific terms of the lease. *Richwind* 335 Md. at 670-71, 645 A.2d at 1151-52. This duty is independent of the contractual relationship between landlord and tenant and provides a basis for a negligence claim. *Id*. Maryland courts have consistently allowed tenants to pursue negligence claims against landlords for failure to maintain premises in a safe and habitable condition, even when there is also a contractual relationship between the parties. *See*, e.g., *Stein v. Overlook Joint Venture*, 246 Md. 75, 81, 227 A.2d 226, 230 (Md. 1967) (establishing that a negligence on part of a landlord may be inferred where the landlord had knowledge of dangerous conditions on the leased premises and the landlord failed cure the dangerous conditions).

Furthermore, the remedies available under a negligence theory differ from those available under a breach of contract theory. Under a negligence claim, a plaintiff like Ms. Hall may recover for personal injuries and emotional distress, which may not be available under a breach of contract claim. Therefore, Ms. Hall should be permitted to pursue both theories of liability.

Accordingly, Defendants' motion to dismiss Count IV of the Amended Complaint should be denied.

**E.  Ms. Hall's relief requests are proper under Maryland law, and therefore, should not be dismissed.**

Defendants' attempt to dismiss Ms. Hall's requests for relief is without merit. First, Ms. Hall properly requested relocation assistance funds and alternative housing costs. Second, Ms. Hall adequately alleged a basis for punitive damages.

Contrary to Defendants' assertion, Ms. Hall's request for relocation assistance funds and alternative housing costs is supported by the allegations in the Amended Complaint. The Amended Complaint specifically alleges that the conditions at Heather Hill have rendered units uninhabitable and constructively evicted several tenants. (Am. Compl. ¶ 100). The Amended Complaint further alleges that tenants have incurred "expenses for alternative housing" as a result of Defendants' conduct. (Am. Compl. ¶ 58(d)).

While Defendants argue that Ms. Hall has not alleged that she personally moved or relocated, such an allegation is not necessary at this stage. Ms. Hall seeks relief on behalf of herself and a class of similarly situated individuals, and the Amended Complaint alleges that some of the proposed class members have incurred alternative housing costs. (*Id*. ¶ 58(d)). Moreover, the Amended Complaint alleges that Defendants' conduct has created "dangerous living conditions" and forced "tenants to seek alternative housing." (*Id*. ¶ 100). These allegations are sufficient to support Ms. Hall's request for relocation assistance funds and alternative housing costs.

Additionally, Ms. Hall adequately alleged a basis for punitive damages. The Amended Complaint contains numerous allegations of malicious, willful, and intentional misconduct by Defendants. Specifically, the Amended Complaint alleges that "HHPC's breaches were knowing and willful, as demonstrated by systematic failure to make repairs, a pattern of ignoring maintenance requests, continued collection of rent for uninhabitable units, operation without

required licensing, and retaliatory actions against complaining tenants." (*Id.* ¶ 101). The Amended Complaint further alleges that Defendants engaged in a "common scheme to operate Heather Hill Apartments without required licensing" (*Id.* ¶ 15), "knowingly operated without the required multi-family dwelling license despite clear statutory requirements" (*Id.* ¶ 15), and "collected rent and fees during periods when they had no legal authority to do so" (*Id.* ¶ 56). These allegations, if proven, would demonstrate the type of evil motive, intent to injure, or reckless disregard for the rights of others that would justify an award of punitive damages.

Moreover, the Maryland Consumer Protection Act specifically authorizes punitive damages for willful violations. The Amended Complaint contains detailed allegations of Defendants' willful violations of the CPA, including misrepresentations about the property's condition and the Defendants' authority to collect rent. These allegations are sufficient to support Ms. Hall's request for punitive damages.

Accordingly, Ms. Hall's requests for relief are proper.

## IV.    **CONCLUSION**

By reason of the foregoing, Ms. Hall respectfully requests that the Court deny Defendants' motion to dismiss, and grant Ms. Hall such further relief as the Court deems just and proper.

\\

\\

\\

\\

\\

\\

Dated: March 18, 2025

Respectfully submitted,

*/s/ Jordan D. Howlette*
JORDAN D. HOWLETTE
D. Md. Bar No.: 21634
Managing Attorney
Justly Prudent
1140 3rd St. NE
Washington, DC 20002
Tel: (202) 921-6005
Fax: (202) 921-7102
jordan@justlyprudent.com
*Counsel for Plaintiff*