# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CHARLENE HALL, individually and on
behalf of all others similarly situated,

     *Plaintiffs*,

v.

HEATHER HILL PROPERTY
COMPANY, LLC, *et al.*,

     *Defendants*

No. 25-cv-0238-ABA

## MEMORANDUM OPINION

Plaintiff Charlene Hall has sued Heather Hill Property Company ("HHPC"),

Heather Hill Operating Company ("HHOC"), and One Wall Communities ("One Wall")

(together, "Defendants"), which jointly operate Heather Hill Apartments, where Ms.

Hall has lived since 2017. She alleges that Defendants failed to obtain the necessary

licensing to operate Heather Hill, and failed to adequately maintain her apartment. She

alleges this conduct violated Maryland statutes and common law, and has sued on

behalf of a putative class. Defendants have moved to dismiss some of her individual

claims (Count One in part, and counts two through four in full), and briefing on class

certification has been stayed pending a decision on the motion to dismiss. For the

reasons stated below, the Court will grant the motion to dismiss in part and deny it in

part.

## BACKGROUND

At the pleadings stage, the Court must "accept as true all of the factual allegations

contained in the complaint and draw all reasonable inferences in favor of the plaintiff."

*King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

Ms. Hall alleges that "Defendants operate as a joint enterprise" Heather Hill Apartments, which is "a 459-unit apartment complex located in Temple Hills, Maryland." ECF No. 14 ¶¶ 1, 13. She alleges that "OneWall acquired the property and created HHPC and HHOC as subsidiary instrumentalities" and that "HHPC holds title to the property but has delegated operational control to HHOC as master lessee." *Id.* ¶ 13. Ms. Hall further alleges that "HHOC collects rent and fees on behalf of OneWall and HHPC" and that OneWall "manages HHPC and HHOC" and "directs all communications with tenants." *Id.* She contends that "all three entities share officers and resources." *Id.*

Ms. Hall alleges that Defendants failed "to maintain habitable living conditions at Heather Hill Apartments" and from April 2022 through January 13, 2025, "operat[ed] without required licenses and collect[ed] rent and fees in violation of Maryland law." *Id.* ¶¶ 1–2. Ms. Hall alleges that there are "widespread issues" at the apartments, "including sewage backups, water leaks, mold, pest infestations, and numerous fire and safety code violations," and that "Defendants have consistently failed to make necessary repairs or address these serious habitability issues," "[d]espite receiving countless maintenance requests and complaints from tenants," and that those poor conditions have caused various health issues. *Id.* ¶¶ 3, 25–33.

Ms. Hall alleges that her unit specifically has "improperly installed flooring that ha[s] caused her to fall, defective interior doors, broken patio doors creating a security risk, and missing fire extinguishers on her floor," that she "has experienced persistent water damage and mold issues stemming from" "recurring leaks through bathroom exhaust fans," "water bubble formations in the kitchen ceiling drywall," "yellow liquid seeping through bathroom ceiling," "water damage to closet ceilings and walls," "kitchen

cabinets separating from walls due to water damage," "warped and cracking countertops from water infiltration," and "recurring black mold growth that Defendants merely painted over." *Id.* ¶¶ 38–39. Ms. Hall further alleges that her "unit has lacked essential services and appliances" such as having "no heat since at least November 29, 2023," "persistent periods without hot water," "a non-functioning oven reported multiple times," "a malfunctioning refrigerator that has forced her to discard impacted groceries and endangered her insulin," "a defective dishwasher," "a leaking washing machine" and "non-working kitchen lights," and that her unit "has been plagued by" mouse infestations. *Id.* ¶¶ 40–41. Ms. Hall also alleges that she and her family have health issues "linked to the mold in her unit." *Id.* ¶¶ 43–44. Ms. Hall alleges that these conditions have caused her "and her family to suffer serious health issues, including respiratory problems, severe headaches, ear infections, chronic coughing, nasal and sinus congestion, body rashes, dizziness, and nosebleeds requiring specialized care from an Otolaryngologist." *Id.* ¶ 42. Similarly, she alleges that her "doctors have confirmed her health issues are linked to the mold in her unit, as evidenced by" doctors' letters and medical records. *Id.* ¶ 43.

Ms. Hall alleges that "HHPC and/or HHOC have failed to properly address these issues," and have "persistently ignore[d] or delay[ed] responses to Ms. Hall's maintenance tickets," "[d]espite hundreds of maintenance requests," and that "[w]hen HHPC and/or HHOC did respond to Ms. Hall's complaints, their actions were inadequate," including "paint[ing] over the black mold instead of remediating it," "refus[ing] to open walls to address the water" leak, and making "superficial repairs that failed to resolve issues." *Id.* ¶¶ 44–45. She further alleges that "HHPC and/or HHOC provided misleading information to Ms. Hall about the causes of certain problems" and

"have engaged in retaliatory conduct against Ms. Hall with baseless lease violation citations." *Id.* ¶ 44.

Ms. Hall originally filed this case in the Circuit Court for Prince George's County, Maryland. ECF No. 4. Defendants removed the case to this Court based on diversity of citizenship and moved to dismiss. ECF Nos. 1 & 11. Ms. Hall then filed the operative amended complaint. Ms. Hall alleges that Defendants violated the Maryland Consumer Protection Act ("MCPA"), Md. Code, Com. Law §§ 13-101, *et seq.* (Count One, against all Defendants), breached the implied warranty of habitability and violated Maryland Code, Real Property § 8-211 (Count Two, against all Defendants), violated the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code, Com. Law §§ 14-201, *et seq.* (Count Three, against HHOC), were negligent (Count Four, against all Defendants), breached their contract with Plaintiff (Count Five, against HHPC), and alternatively, that Defendants were unjustly enriched (Count Six, against HHPC and One Wall). ECF No. 14. Defendants have moved to dismiss Count One (the MCPA count) in part and counts two through four in full. ECF No. 17. Ms. Hall responded to the motion, and Defendants replied. ECF Nos. 18 & 19. Thereafter, Ms. Hall moved for class certification, ECF No. 22, but the Court approved the parties' stipulation to hold that motion in abeyance pending adjudication of the motion to dismiss. ECF Nos. 23 & 24.

## STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, the complaint's "[f]actual allegations must

be enough to raise a right to relief above the speculative level" and state a facially plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As noted above, when considering such a motion, the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King*, 825 F.3d at 212.

## DISCUSSION

Ms. Hall has sued Defendants for (1) failing to obtain and maintain a license as required by Prince George's County Code § 13-181(a) ("No person shall conduct or operate . . . within the County any single-family rental facility or any multifamily rental facility . . . without having first obtained a license as provided in this Division."); (2) failing to adequately maintain physical conditions at the apartment complex, to the point her apartment (and those of at least some of her fellow putative class members) became uninhabitable; and (3) violating certain duties related to debt collection. She asserts that those actions or omissions give rise to liability under Maryland common law and certain statutes.

As noted above, Defendants have moved to dismiss some of Plaintiff's claims. The Court will analyze the challenged claims count-by-count, rather than based on factual theory, because some counts rely on multiple factual theories, and the Court will start with Count Three, because that analysis potentially affects other claims. But as explained below, the fact that all three theories are alleged is significant as to some of the counts, because in general a tenant may not sue a landlord for damages (such as to

5

recover rent that has been paid) simply for having failed to obtain or maintain a license. Unlike cases where tenants only challenge a landlord's failure to obtain a license, here Ms. Hall alleges that Defendants fell short in other aspects of their duties as landlords that she alleges caused her actual injuries.

## I.    Count Three: Maryland Consumer Debt Collections Act (against HHOC)

Count Three asserts that HHOC violated section 14-202 of the MCDCA, Md. Code, Com. Law, § 14-202, which prohibits "collector[s]" from engaging in certain conduct in collecting an alleged debt. Ms. Hall appears to allege (ECF No. 14 ¶ 74) that HHOC violated three subsections of that statute:

- 14-202(8), for "claim[ing], attempt[ing], or threaten[ing] to enforce a right with knowledge that the right does not exist";
- 14-202(10), for "engag[ing] in unlicensed debt collection activity" that violates the Maryland Collection Agency Licensing Act ("MCALA"); and
- 14-202(11), for "engag[ing] in any conduct that violates §§ 804 through 812 of the federal Fair Debt Collection Practices Act" ("FDCPA").

Ms. Hall principally premises Count Three on Defendants' failure to obtain a rental license. *See* ECF No. 14 ¶ 78. But she also alleges that HHOC violated § 14-202(8) by failing to maintain the habitability of her unit and nonetheless collecting rent while unlicensed. *See id.* ¶ 77(a) (alleging that HHOC violated § 14-202 by "[c]ollecting and attempting to collect rent and fees during periods when . . . the property failed to meet basic habitability standards"); *id.* ¶ 77(c) (alleging that HHOC used "unfair and unconscionable means to collect debts by . . . demanding payment for uninhabitable units"). And, crucially, she alleges that those theories interrelate: that HHOC's failure to

obtain a rental license itself contributed to the alleged habitability issues. *See, e.g.*, *id.* ¶ 22 (alleging that Heather Hill lost its temporary license after failing a fire safety inspection).

### A.    Section 14-202(8)

Section 14-202(8) of the MCDCA prohibits collectors from "claim[ing], attempt[ing], or threaten[ing] to enforce a right with knowledge that the right does not exist." Md. Code, Com. Law § 14-202(8). Here, Plaintiff claims that HHOC violated § 14-202(8) by, among other things, "[c]ollecting and attempting to collect rent and fees during periods when: (i) they knew HHPC lacked legal authority to collect rent due to invalid licensing; and (ii) they knew the property failed to meet basic habitability standards." ECF No. 14 ¶ 77(a). She also alleges that the maintenance issues have caused physical injuries resulting in medical treatment. *Id.* ¶¶ 43 & 44.

The MCDCA defines a collector as "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction," which Plaintiff alleges includes HHOC. *Id.* § 14-201(b); *see Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 375 (4th Cir. 2022) (holding that a mortgage servicer was a collector under the MCDCA). To prove a claim under section 14-202(8), a plaintiff must establish that "(1) the debt collector 'did not possess the right to collect the amount of debt sought'; and (2) the debt collector 'attempted to collect the debt knowing that [it] lacked the right to do so.'" *Chavis v. Blibaum & Assocs., P.A.*, 476 Md. 534, 553 (2021) (quoting *Mills v. Galyn Manor Homeowner's Ass'n, Inc.*, 239 Md. App. 663, 677 (2018)). And as with all MCDCA violations, to establish a violation of section 14-202(8), a plaintiff must allege that the unlicensed collection activity caused "actual damages." *See Assanah-Carroll v. L. Offs. of Edward J. Maher, P.C.*, 480 Md. 394, 415 (2022) ("Like the MCPA, actual

7

damages are an element of any MCDCA claim.").[1] As noted above, Plaintiff contends that Defendants violated the MCDCA both (a) by collecting rent while lacking a landlord license and (b) by failing to adequately maintain the apartment. The Court will address these theories in turn.

### 1.    Collecting Rent While Unlicensed

In *Assanah-Carroll*, the Supreme Court of Maryland defined the contours of MCDCA (and MCPA) claims in connection with landlords' efforts to collect rent while unlicensed.[2] In that case, Assanah-Carroll, an apartment tenant, "made rental payments during the period when the property's license had lapsed" but "stopped making rental payments when she learned that the property's license was not in effect." 480 Md. at 403. After the landlord renewed its license, it "filed summary ejectment actions" against the tenants like Assanah-Carroll who had stopped paying rent "to collect unpaid rent

---

[1] Throughout the *Assanah-Carroll* opinion, the Supreme Court of Maryland treated the MCDCA and MCPA claims under the circumstances at issue there as essentially co-extensive, applying MCPA cases to both the MCPA and MCDCA claims in that case. *See. e.g.*, *Assanah-Carroll*, 480 Md. at 401 (holding that "a tenant who voluntarily paid rent to a landlord who lacked a rental license may not bring a private action under the MCPA or the MCDCA to recover restitution of rent based upon the landlord's lack of licensure" and that "a tenant may have a claim under the MCDCA and the MCPA to the extent that the landlord's unlawful collection activity caused the tenant to suffer damages"). This Court will do likewise.

[2] *Assanah-Carroll* concerned the Baltimore City Code requirement that "a person may not rent or offer to rent a residential dwelling unit without a rental license issued by the Baltimore City Housing Commissioner." 480 Md. at 405 (citing Baltimore City Code Art. 13, § 5-4(a)(1)); *id*. at 440 ("Where a municipality or county enacts a rental license law which conditions the performance of a residential lease upon the issuance of a rental license, and a landlord fails to possess a valid license for a period of a tenant's occupancy, a landlord may not utilize the courts . . . to recover unpaid rent that is attributable to an unlicensed period."). This case involves a similar Prince George's County code provision.

that would have been owed during the period that the property was unlicensed." *Id*. at 404.

The court in *Assanah-Carroll* held that "the landlord's action in renting the unlicensed dwelling constituted an unfair and deceptive trade practice," *id*. at 417 (citing *Golt v. Phillips*, 308 Md. 1, 11 (1986)), and that "where a landlord attempts to collect unpaid rent from a tenant during a period when the landlord lacked a license to engage in such activity, a tenant may have a claim under the MCDCA and the MCPA"—but only "to the extent that the landlord's unlawful collection activity caused the tenant to suffer damages." *Id*. at 401. And then the court drew a distinction: Under some circumstances, damages can include "rent payments made in response to the landlord's attempts to collect the unpaid rent." *Id*. But "a tenant who *voluntarily* paid rent to a landlord who lacked a rental license may *not* bring a private action under the MCPA or the MCDCA to recover restitution of rent based upon the landlord's lack of licensure." *Id*. (emphases added).

*Assanah-Carroll* left open exactly what conduct makes a rental payment involuntary or compelled and therefore an injury compensable under the MCDCA and the MCPA, and also did not expressly define what constitutes an "unlawful collection activity" in the context of a landlord who has failed to obtain or maintain a rental license. *See, e.g. id*. at 442–43 ("[A] landlord may not engage in debt collection activities *or* pursue claims against a tenant who has failed to pay rent attributable to a period during which the landlord was unlicensed.") (emphasis added); *id*. at 427 (framing the question as "a landlord's right to engage in debt collection activities, *including* pursuing claims against the tenant in court") (emphasis added). But the court in *Assanah-Carroll* made clear that not all collection activities violative of the MCPA and MCDCA create a

private cause of action. *Id.* at 401, 440–41. And the holding of *Assanah-Carroll* under the facts presented there was that, under the MCDCA and MCPA, when "a landlord fails to possess a valid license for a period of a tenant's occupancy, a landlord *may not utilize the court*s . . . to recover unpaid rent that is attributable to the unlicensed period," *id.* at 442 (emphasis added), and that a tenant may have a claim only "to the extent that the landlord's unlawful collection activity caused the tenant to suffer damages," *id.* at 401.

Thus in context, when *Assanah-Carroll* refers to "unlawful collection activity" that renders a tenant's payment of rent not "voluntary," it was referring to a landlord who "utilize[s] the courts" to obtain a summary ejectment order or a judgment for payment of rent. This Court will not read *Assanah-Carroll* more broadly than that without additional clarifying precedent from the Supreme Court of Maryland. Other judges of this Court have agreed. *See Zambali v. Shulman Rogers, P.A.*, Case No. 23-cv-03194-SAG, 2024 WL 3161590, at *4 (D. Md. June 25, 2024) (concluding that the plaintiff could not maintain a claim based on a lack of licensure "because he ha[d] not alleged that he suffered any damages in response to the actions [the landlord] took" including filing two failure-to-pay-rent lawsuits that the landlord ultimately "voluntarily dismissed . . . when Zambali went to court," and noting that while the landlord "should not have filed these cases" because of the lack of licensure, "the Complaint fails to identify a single injury resulting from the lawsuits" including the payment of rent, "any fees or charges relating to the lawsuits," or any moving costs); *Exum v. Kane*, Case No. 24-cv-1425-DKC, 2025 WL 834014, at *6 (D. Md. Mar. 17, 2025) (concluding among other things that "Plaintiff's claim that the filing of the [failure-to-pay-rent] suits itself constitutes a concrete injury fails" where the suit was voluntarily dismissed), *opinion clarified*, 2025 WL 2049985 (D. Md. July 22, 2025).

Ms. Hall alleges that HHOC violated the MCDCA by, among other things, "[c]ollecting and attempting to collect rent and fees" when "they knew HHPC lacked legal authority to collect rent due to invalid licensing," by threatening legal action and "filing over 130 baseless failures to pay rent actions" against tenants other than Ms. Hall, and by "attempting to collect [rent] through coercion and harassment." ECF No. 14 ¶ 77. By way of example, Ms. Hall alleges that "on August 19, 2024, after HHPC's rental license was suspended, HHOC issued notices to tenants demanding rent payments, requiring payment by specific methods, threatening late fees, and implying legal authority they did not possess." *Id.* ¶ 78. Likewise, Ms. Hall alleges that HHOC knew its "collection activities were unlawful because" "it knew that HHPC lacked required rental licensing," "it received multiple notices of violation," "it knew HHPC's temporary license was suspended," "it was notified of habitability issues by" the Prince George's County Department of Permitting, Inspections, and Enforcement and "it voluntarily dismissed over 130 rent actions when challenged." *Id.* ¶ 79.

Ms. Hall, however, has not alleged that Defendants filed a legal action against her or initiated some other form of legal compulsion that resulted in concrete injury that would render her payment of rent not "voluntary" within the meaning of *Assanah-Carroll*. *See* 480 Md. at 401. As a result, Ms. Hall cannot maintain an MCDCA claim premised only on the theory that HHOC attempted to collect rent from her with the knowledge that it did not have the right to do so due to its lack of licensure. To proceed with such claims, Ms. Hill must also allege that she was actually injured in that she involuntarily paid rent payments pursuant to a court order, which she has not done.

### 2.    Collecting Rent While the Apartment Was Unlicensed and Had Habitability Issues

Ms. Hall also alleges that HHOC violated § 14-202(8) by collecting rent "during periods of alleged uninhabitable conditions." ECF No. 18 at 23.[3] Habitability was not at issue in *Assanah-Carroll*. Under this theory, Ms. Hall's alleged injury is not the legally compelled payment of rent but the allegation that Ms. Hall received less than she bargained for regarding her apartment and that she suffered damages as a result, such as medical costs.

*McDaniel v. Baranowski*, is instructive on this issue. In that case, McDaniel rented an apartment that was, unbeknownst to her, unlicensed. 419 Md. 560, 564 (2011). The apartment also had significant habitability issues such as a "sizzling and sparking" fuse box that caused the apartment to lose power "'quite a few times' a day," "two windows that had fallen out of their frames, hitting McDaniel and her young daughter on the head," windows that "were missing locks," and a loose kitchen countertop. *Id*. at 565–66. The Department of Health also found "numerous Code violations involving the poor condition of the windows, kitchen countertop, and electrical system." *Id*. at 566. McDaniel stopped paying rent and the landlord filed a summary ejectment action against her and secured an order of eviction. *Id*. at 567. McDaniel counterclaimed alleging, among other things, violations of the MCPA. *Id*. at 568. The Maryland Supreme Court held that a landlord may not file a summary ejectment action for failure to pay rent when it lacks a license to rent the property at issue. *Id*. at 563, 587.

---

[3] Citations to briefs are to the ECF page numbers, which may differ from the pagination used by the parties.

The court in *McDaniel* then held, however, that despite the fact that the landlord was prohibited from filing an ejectment action against McDaniel because the property was unlicensed, McDaniel could not maintain her MCPA claim because she had not shown "actual loss or injury." *Id.* at 588. The court contrasted *CitaraManis*, 328 Md. 142, with *Golt*, 308 Md. 1. In *CitaraManis*, the court had held that the plaintiffs did not have an MCPA claim for mere lack of licensure of an apartment without allegations "that the house they had rented 'was unclean, unsafe, uninhabitable or unsuitable in any regard,' or that they had suffered any diminution of the rental value of the property as a result of the lack of licensure." 328 Md. at 587. In *Golt*, the tenant did have an MCPA claim because he "was forced to move to another apartment, because the unit he had rented from an unlicensed landlord contained numerous housing code violations" and habitability issues such as those at issue here "including no toilet facilities . . . defective door locks, and the lack of fire exits and fire doors." 308 Md. at 5–6. The *McDaniel* court concluded that in *Golt*, the plaintiff had "demonstrated actual injury, in both the diminution of value of the premises due to defects in the unit . . . and also in the cost of securing suitable substitute housing." *Id.* But despite the habitability issues in the apartment, the court held that McDaniel's claim was more like the claim in *CitaraManis* because McDaniel had "failed to present any evidence that she sustained any actual damages, such as bills for medical treatment, loss of wages, or the cost of securing suitable substitute housing, for example." *Id.* at 587–88.

Here, unlike in *McDaniel*, Ms. Hall has alleged actual damages in that she has alleged that she has expended resources on medical treatment. ECF No. 14 ¶¶ 42 & 43. Therefore, this case is more like *Golt* than *CitaraManis*, and Ms. Hall's claim for those damages may proceed.

Despite the case law discussed above, Defendants argue that collecting rent while an apartment is uninhabitable does not violate the MCDCA. They assert that because Maryland's habitability statute does not expressly state that landlords may not collect rent while a unit is uninhabitable, by attempting to collect rent from Ms. Hall, HHOC did not attempt to enforce a right *knowing* that the right did not exist. ECF No. 17-1 at 19 (citing Md. Code, Real Prop. § 8-211(h)); *see* Md. Code, Com. Law § 14-202(8). But section 8-211, entitled "[d]uty of landlords to repair or eliminate serious conditions and defects of residential dwelling units," "imposes an obligation on landlords to repair and eliminate" dangerous conditions *and* allows a tenant to withhold rent when such conditions exist. Md. Code, Real Prop. § 8-211(d) & (h). At least for pleading purposes, Ms. Hill has adequately stated a claim under the MCDCA based on her allegations that the apartment was not only unlicensed but also was uninhabitable and she sustained related injuries.

Summarizing the two preceding subsections, any MCDCA claim premised on HHOC attempting to collect rent while unlicensed when it knew it did not have the right to do so, without allegations that HHOC caused injury by obtaining rent payments pursuant to a judgment or an eviction order, will be dismissed with prejudice and, under those circumstances, Ms. Hall will not be able to obtain as damages rent paid during such periods. But any MCDCA claim premised on HHOC attempting to collect rent while unlicensed when it knew it did not have the right to do so *and while the apartment was uninhabitable*, and where Ms. Hall suffered damages as a result of those conditions, will not be dismissed.

**B.    Section 14-202(11)**

Defendants argue that to the extent Ms. Hall is alleging violations of section 14-202(11) of the MCDCA, which creates derivative MCDCA claims based on violations of the FDCPA, they fail because Ms. Hall has not alleged that that Defendants meet the definition of "debt collector" under the FDCPA.

Under § 14-202(11), "a collector may not . . . [e]ngage in any conduct that violates §§ 804 through 812 of the federal Fair Debt Collection Practices Act." Md. Code, Com. Law § 14-202(11). The FDCPA safeguards consumers from abusive and deceptive debt collection practices by debt collectors. *See Spencer v. Henderson-Webb, Inc.*, 81 F. Supp. 2d 582, 590 (D. Md. 1998) (citing *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996)). The statute defines debt collector as "any person . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debts owed . . . [to] another." 15 U.S.C. § 1692a(6).

As stated, the MCDCA defines a collector as "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction," which is a broader definition than "debt collector" in the FDCPA or (as discussed below) "collection agency" in the MCALA. Md. Code, Com. Law § 14-201(b).

Regarding this derivative FDCPA claim, the Fourth Circuit has concluded that because section 14-202(11) of the MCDCA only incorporates specific provisions of the FDCPA, and does not incorporate the narrower definition of "debt collector" in the FDCPA, violations of section 14-202(11) are governed by the broader definition of "collector" found in the MCDCA. In *Alexander*, the Fourth Circuit held that "[t]he MCDCA's broader definition" of "collector" controls the section 14-202(11) claim "as it is not displaced by the federal definition." 23 F.4th at 375. The court noted that the

15

Maryland legislature intentionally "incorporated only the FDCPA's 'substantive provisions' (sections 804 through 812)" and not "section 803, which includes the FDCPA's narrower definition of 'debt collector'" or "the FDCPA's remedial structure as to affirmative defenses, the statute of limitations, or civil remedies." *Id.* at 375–76. The court concluded that "state law need not totally incorporate federal law" and that "state legislatures can incorporate federal law to the extent that they see fit; incorporation is no all-or-nothing enterprise." *Id.* at 376. As stated above, HHOC appears to meet the definition of collector under the MCDCA and the parties do not argue otherwise. Therefore, the Court will not dismiss Ms. Hall's section 14-202(11) MCDCA claim on the basis that HHOC is not a "debt collector" under the FDCPA. The 14-202(11) claim may ultimately fail on other grounds, but the only argument raised by Defendants at this time is that they do not meet the FDCPA's definition of "debt collector," which is not a viable argument.

### C.    Section 14-202(10)

Similarly, Defendants argue that to the extent Ms. Hall is alleging violations of section 14-202(10), which creates derivative MCDCA claims based on violations of the MCALA, they fail because Ms. Hall has not alleged that that Defendants meet the definition of "collection agency" under the MCALA.

Section 14-202(10) provides that "a collector may not . . . [e]ngage in unlicensed debt collection activity in violation of the [MCALA]." Md. Code, Com. Law § 14-202(10). The MCALA prohibits any person from "knowingly and willfully do[ing] business as a collection agency in the State unless the person has a license." Md. Code, Bus. Reg. § 7-401(a). The statute defines "collection agency" in relevant part as including "a person

who engages directly or indirectly in the business of" "collecting for, or soliciting from another, a consumer claim." *Id.* § 7-101(c)(1)(i).

Section 14-202(10), regarding MCDCA claims that are derived from MCALA violations, does incorporate all of the MCALA, however—unlike MCDCA claims derived from the enumerated sections of the FDCPA under section 14-202(11), discussed above. Md. Code, Com. Law § 14-202(10). The Court therefore concludes that, unlike the derivative FDCPA claim in section 14-202(11), Ms. Hall must allege that HHOC meets the definition of "collection agency" under the MCALA to allege a derivative claim under section 14-202(10). She has not done so because she has not alleged that HHOC engages "in the business of . . . collecting *for . . . another*, a consumer claim." Md. Code, Bus. Reg. § 7-101(c)(1)(i) (emphasis added). Though Ms. Hall alleges that "HHOC assigned its interests in all leases and tenant rents to HHPC," Plaintiff alleges that HHOC is the party that holds the claim to rent, ECF No. 14 ¶ 17, as "HHPC . . . has delegated operational control to HHOC as master lessee." *Id.* ¶ 13. Thus, HHOC was not "collecting for . . . another, a consumer claim." Md. Code, Bus. Reg. § 7-101(c)(1)(i); *see also Young-Bey v. S. Mgmt. Corp., Inc.*, Case No. 18-cv-2331-TDC, 2018 WL 4922349 at *2 (D. Md. Oct. 10, 2018) ("SMC, however, is the lessor of Young-Bey's apartment and therefore would not be seeking to collect a debt owed to a third party. . . . Moreover, where SMS is listed on the lease and its primary line of business is managing the apartment complex, it likely does not qualify as a collection agency.").

Therefore, the Court will dismiss without prejudice any MCDCA claim based on an alleged violation of the MCALA as Ms. Hall has not alleged that HHOC is a collection agency under MCALA or is not otherwise excepted pursuant to section 7-102(b)(10).

## II.    Count One: Maryland Consumer Protection Act § 962(d) (against all Defendants)

The MCPA prohibits trade practices that are unfair, abusive, or deceptive in, among other things, the "lease . . . of . . . consumer realty" and the "[t]he collection of consumer debts." Md. Code, Com. Law § 13-303(1), (5). Unfair or deceptive trade practices include, among others, a false or misleading "representation of any kind which has the . . . effect of deceiving or misleading consumers," or representations that a merchant or consumer realty has "a sponsorship [or] approval" that they do not have. *Id.* § 13-301(1), (2)(i) & (ii). Further, a violation of the MCDCA is a *per se* violation of the MCPA. *See, e.g.*, *Assanah-Carroll*, 480 Md. at 415 n.13. As discussed above, Ms. Hall has adequately alleged a stand-alone MCDCA violation. Therefore, at a minimum she has alleged a derivative MCPA claim.

A consumer pursuing a stand-alone MCPA claim must allege "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Alexander*, 23 F.4th at 380 (quoting *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012)). Thus, although rental of a dwelling that has not been licensed is an unfair or deceptive practice, *see Golt*, 308 Md. at 9 (citing § 13-301(2)), a tenant pursuing a stand-alone MCPA claim (as with the MCDCA claim) may only recover if they suffer "actual injury or loss" because the landlord collected rent while unlicensed. *Compare Assanah-Carroll*, 480 Md. at 420 ("Simply alleging a lack of licensure is not enough.") (collecting cases), *and Aleti v. Metropolitan Baltimore, LLC*, 479 Md. 686, 722 (2022), *with Golt*, 308 Md. at 9–12. Specifically, as discussed above, an unlicensed landlord "may not utilize the courts . . . to recover unpaid rent that is attributable to an unlicensed period" when doing so causes "actual injury or loss." *Assanah-Carroll*, 480

Md. at 440; *see Zambali*, 2024 WL 3161590 at *4 (holding that the plaintiff, who did not allege that he made any rental payments, suffered no injury-in-fact when the unlicensed landlord commenced multiple summary ejectment proceedings but voluntarily dismissed the claims upon the plaintiff presenting to court).

As with Ms. Hall's section 14-202(8) MCDCA claim, Defendants challenge the alleged violations of the MCPA in the amended complaint that are based on (1) Defendants' rent collection activities without a license, and (2) habitability issues.

Regarding the first allegation, Ms. Hall contends that Defendants "fil[ed] baseless court actions against tenants while lacking legal authority to collect rent," "threaten[ed] eviction and late fees while operating without valid licensing," and "voluntarily dismissed over 130 rent actions when challenged." ECF No. 14 ¶¶ 57, 79. If Ms. Hall was injured because she was legally compelled to pay rent after Defendants initiated court proceedings against her and obtained a judgment for a time when they were unlicensed, she may have an MCPA claim based on those actions. *Assanah-Carroll*, 480 Md. at 401 (holding that MCPA prohibitions extend to landlords "fil[ing] an action against a tenant to recover unpaid rent attributable to the period when the property was not licensed" and "payments [were] made in response to the landlord's attempts to collect the unpaid rent"); *Zambali*, 2024 WL at *4. But as with Count Three, Ms. Hall does not allege that Defendants initiated any legal actions against her or that she was compelled to make any payments as a result of those court actions. Thus, she has not adequately pled an MCPA claim based on Defendants' attempts to collect rent while unlicensed.

In the second allegation, Ms. Hall alleges that she was injured by Defendants' lack of licensure because the habitability issues that licensure is designed to prevent caused her, among other things, "to suffer serious health issues . . . requiring specialized

care" and "expenses for . . . medical care." ECF No. 14 ¶¶ 42, 58. Under *Golt*, a plaintiff may recover under the MCPA for habitability issues causing injury when the defendant landlord lacks a license. 308 Md. at 13 ("Thus, it is apparent that the licensing requirement is an integral part of the City's effort to maintain safe residential conditions for its citizens. Dwellings that are not licensed escape the inspector's scrutiny and thus provide no opportunity for the City to ensure minimum living conditions."); *McDaniel*, 419 Md. at 564–65 ("Those [licensing] requirements are designed to ensure the safety and habitability of the premises, namely that the dwelling is 'clean, sanitary, fit for human occupancy, and in compliance with this title and other applicable State and County law.") (quoting Anne Arundel County Code § 15-4-103). Because Ms. Hall alleges that the lack of licensure led to medical care costs arising from the habitability issues, ECF No. 14 ¶ 58, as with her MCDCA claim, she has adequately alleged an MCPA violation based on this conduct. *See McDaniel*, 419 Md. at 587–88 (finding that despite MCPA violations, the plaintiff "failed to present any evidence that she sustained any actual damages, *such as bills for medical treatment*, loss of wages, or the cost of securing suitable substitute housing, for example") (emphasis added).

Defendants argue that the MCPA does not cover a "landlord's acts or omissions during the term of the lease," and that the MCPA is not "applicable to statements or omissions concerning the leased premises *occurring during the term of the lease*." ECF 17-1 at 14 (quoting *Richwind Joint Venture 4 v. Brunson*, 335 Md. 661, 683–84 (1994), *overruled on other grounds by Brooks v. Lewin Realty III, Inc.*, 378 Md. 70 (2003)). But as noted in *Smith v. Westminster Management, LLC*, violations of the MCPA during the lease term are actionable. 257 Md. App. 336, 381–82, 393–94 (2023), *aff'd*, 486 Md. 616 (2024). In *Smith*, the Appellate Court of Maryland distinguished *Richwind*

and held that the MCPA does not apply only to "alleged unfair or deceptive trade practices that occur at the inception of the lease" since an action does not accrue until the plaintiff suffers harm. *Id.* at 393-94. The court concluded that the lead-paint cases cited by the defendant to the contrary were "irrelevant" and stood "for the proposition that, when a tenant alleges that the landlord has violated the [MCPA] by misrepresenting the condition of the leased premises, the violation occurs when the consumer initially entered into the lease" but that the plaintiffs were "not alleging that [the defendant] misrepresented the condition of their rental units when they initially rented them" and instead were claiming that the defendant "collect[ed] money from them that it had no legal right to collect." *Id.* at 381–82. That is the posture of this case as well.

For these reasons, Ms. Hall's claim that Defendants violated the MCPA by misrepresenting that they were entitled to collect rent when they were not due to a lack of licensure (with no other actual injury alleged) will be dismissed with prejudice. But her claim that Defendants violated the MCPA by misrepresenting that they were entitled to collect rent when they were not due to a lack of licensure *and* the property was not habitable *and* Ms. Hall suffered actual injury as a result, may proceed to discovery.

### III.    Count Two: Breach of Implied Warranty of Habitability and Violation of Maryland Code, Real Property § 8-211 (against all Defendants)

In Maryland, a "landlord that offers a residential dwelling unit for rent . . . shall be deemed to warrant that the dwelling unit is fit for human habitation." Md. Code, Real Prop. § 8-212(c). A dwelling is fit for human habitation when it is "free from serious defects or conditions that constitute . . . a fire hazard or other serious and substantial threat to the life, health, or safety of occupants of the dwelling unit." *Id.* § 8-212(a); *see*

*also* Prince George's County Code § 13-113(c) ("A structure is unfit for human occupancy whenever . . . such structure is unsafe, unlawful, or . . . is unsanitary, vermin or rat infested, contains filth and contamination, or lacks ventilation, illumination, sanitary or heating facilities, utilities, or other essential equipment required by the code."). To state a breach of warranty of habitability claim in Maryland, the plaintiff must demonstrate that, at any point in the tenancy, *see* Md. Code, Real Prop. §§ 8-212(d), the dwelling is not "fit for human habitation," *id*. § 8-212(c), the landlord had notice of the defect, *id*. § 8-212(f)(1), and that the landlord had a reasonable opportunity to repair the defects yet failed to do so, *id*. § 8-212(f)(2). The statute also allows landlords to escape liability by raising an affirmative defense that the tenant, or those affiliated with the tenant, "caused the asserted defects" or "denied reasonable and appropriate entry" to the landlord for the purpose of repairing the defects. *Id*. § 8-212(h).

Defendants contend that Ms. Hall "has not adequately alleged notice or a reasonable opportunity for Defendants to repair the alleged defects" that she details in the amended complaint. ECF No. 17 at 14 (citing *Richwind*, 335 Md. at 673). But Ms. Hall has alleged that she submitted "hundreds of maintenance requests" regarding the issues in her apartment, ECF No. 14 ¶ 44, and that other tenants submitted numerous maintenance requests regarding similar issues, *id*. ¶¶ 25–28, 30–31. She has also alleged that Defendants "persistently ignore[d] or delay[ed] responses to Ms. Hall's maintenance tickets" and "provided misleading information to Ms. Hall about the causes of certain problems." *Id*. ¶ 44. Ms. Hall further alleges that "Prince George's County inspections documented numerous violations affecting tenant health and safety, including" "mold growth," "inoperable fire safety systems," missing fire extinguishers, "nonfunctioning heating and cooling systems," and structural issues. *Id*. ¶ 29. Regarding

22

a reasonable opportunity to repair, Ms. Hall argues that the Defendants "failed to repair these conditions within a reasonable time or at all," *id.* ¶ 70, including by "closing [maintenance] tickets without completing repairs," "making inadequate temporary repairs," "failing to respond to follow-up requests," *id.*, and "send[ing] unqualified staff to address complex repairs," *id.* ¶ 31; *see id.* ¶ 45 (listing examples of alleged inadequate responses such as painting over black mold instead of remediating it, refusing to open walls to address water leaks, and making superficial repairs that failed to resolve issues). Thus, Ms. Hall has adequately pled that Defendants had notice of the habitability issues, had a reasonable opportunity to cure them, and failed to do so.

Defendants also argue that Ms. Hall's "allegations do not even come close to alleging that Defendants were the cause" of some of the alleged problems, including broken patio doors. ECF No. 17 at 15. Defendants argue that it is "more likely that Plaintiff may have caused [that] alleged issue." *Id.* But this argument, that the tenant is the culpable party, is an affirmative defense that Defendants must prove, making it inappropriate to rule on as part of this motion to dismiss. Md. Code, Real Prop. § 8-212(h)(1). Moreover, Defendants do not argue that all the allege issues were likely caused by Ms. Hall, thus she has adequately alleged that Defendants' inaction caused at least some of the alleged issues. As a result, the Court will deny the motion to dismiss as to Count Two.

## IV.    Count Four: Negligence (against all Defendants)

In order to establish a cause of action for negligence, the plaintiff must establish "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4)

that the loss or injury proximately resulted from the defendant's breach of the duty."
*Richwind*, 335 Md. at 670 (quoting *Rosenblatt v. Exxon*, 335 Md. 58, 76 (1994)).

Though the common law of Maryland has imposed notice and opportunity to cure as an independent requirement to state a negligence claim based on the defective condition of a rental property, *see, e.g.*, *id*. at 673–74, a *prima facie* case of negligence can be established by "proof of a statutory violation, plaintiff's membership in the class of people designed to be protected by the statute, and causation." *Polakoff v. Turner*, 385 Md. 467, 478 (2005) (citing *Brooks*, 378 Md. at 78–81); *id*. at 472 (concluding that *Brooks* overruled the holding in *Richwind*, 335 Md. at 673 that "a landlord is not liable for a defective condition on the property unless the landlord knows or has reason to know of the condition and had a reasonable opportunity to correct it"); *see also Brooks*, 378 Md. at 88–89 (holding that "the notices of [Housing Code] violation[s] . . . were irrelevant" because "[t]he Housing Code does not make the landlord's notice of a defective condition a factor with regard to the landlord's duty to the tenant").

Regarding duty, when a contract claim and negligence claim overlap, "[a] contractual obligation, by itself, does not create a tort duty. Instead, the duty giving rise to a tort action must have some independent basis." *Mesmer v. Maryland Auto. Ins. Fund*, 353 Md. 241, 253 (1999); *Blondell v. Littlepage*, 413 Md. 96, 120–21 (2010) ("The mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort.") (quoting *Jacques v. First Nat. Bank of Maryland*, 307 Md. 527, 533–35 (1986)). "There is no single principle or simple test for determining when a defendant's breach of a contract will also breach an independent duty and give rise to a tort action." *Mesmer*, 353 Md. at 254. Often, "when the dispute is over the existence of

any valid contractual obligation covering a particular matter, or where the defendant has failed to recognize or undertake any contractual obligation whatsoever, the plaintiff is ordinarily limited to a breach of contract remedy." *Id.* But, "[i]t is when the defendant has proceeded on the basis that a contractual obligation exists, has undertaken that obligation, and has undertaken it in violation of the appropriate standard of care, that the plaintiff may, in some circumstances, maintain a tort action." *Id.* This is not always the case, but for the purposes of this case, it is illustrative. *See Bocchini v. Gorn Mgmt. Co.*, 69 Md. App. 1, 17 (1986) (holding "that an action in tort can lie for the negligent performance or the negligent nonperformance of a covenant of quiet enjoyment").

Here, Ms. Hall alleges that the duties Defendants owed to her arise from various provisions of the Prince George's County Code that "are designed to protect tenants' health and safety by ensuring that: (a) properties are properly inspected before occupancy; (b) essential systems are maintained in working order; (c) sanitary conditions are preserved; (d) fire safety measures are implemented; and (e) basic habitability standards are met." ECF No. 14 ¶ 85. Ms. Hall alleges that Defendants violated their duties and the "code provisions by operating Heather Hill without required licensing," and "by failing to maintain minimum property standards, including providing some tenants with non-functional entry door locks, failing to maintain pest-free conditions, failing to maintain operable cooking facilities for some tenants, and failing to maintain adequate heating and cooling systems for several tenants." *Id.* ¶ 89. Ms. Hall further alleges that "[t]hese violations directly caused injuries to Plaintiff and class members including: (a) living in dangerous and unsanitary conditions; (b) exposure to health hazards; (c) loss of use of essential facilities; (d) damage to personal property; (e) medical expenses; and (f) alternative housing costs." *Id.* ¶ 91.

Defendants make two arguments in support of their motion to dismiss the negligence count. The first, similar to their arguments for Count Two, is that Plaintiffs do not adequately plead notice and an opportunity to cure. But, as highlighted in the analysis of Count Two, Ms. Hall pleads sufficient facts regarding notice and opportunity to cure. Regardless, Plaintiffs' negligence claims are largely founded on violations of regulations, and thus, actual notice is not necessary. Plaintiff sufficiently pleads "proof of a statutory violation, plaintiff's membership in the class of people designed to be protected by the statute, and causation." *Polakoff*, 385 Md. at 478.

Defendants also argue that the negligence claim is barred because it is premised on the same allegations as Ms. Hall's breach of contract claims. In Count Five, Defendants allege a breach of, among other things, the "implied warranty of habitability" and the regulation-mandated "express warranty of habitability." ECF No. 14 ¶¶ 96-97. Ms. Hall alleges that Defendants breached these contracts by omitting an express warranty of habitability from the lease, "[f]ailing to maintain premises in habitable condition by allowing chronic sewage backups, failing to repair water leaks, permitting dangerous pest infestations, not maintaining essential systems, and ignoring structural hazards," "[v]iolating express lease terms regarding maintenance obligations, timely repairs, pest control, utilities, and safety measures," and "[b]reaching implied covenants by rendering units uninhabitable, interfering with quiet enjoyment, failing to make repairs, collecting rent without legal authority, and retaliating against complainants." *Id*. ¶ 98.

Thus, both the negligence claim and contract claim largely involve the alleged lack of habitability of the apartment. But this is not a case where Defendants failed completely to perform their alleged contractual obligations to provide and maintain a

26

habitable apartment. Rather, Ms. Hall alleges that Defendants undertook these obligations but executed them in a negligent manner, which indicates that the negligence claim can survive dismissal. *Mesmer*, 353 Md. at 254. "[W]hen a landlord has agreed to make repairs there is a *duty* resting on him to do so, and upon his failure the tenant may either sue on his contract or bring an action on the case founded in tort for neglect of that duty." *Bocchini*, 69 Md. App. at 17 (quoting *Thompson v. Clemens*, 96 Md. 196, 208 (1903)). Similarly, where there is "explicit notice of the defect, recognition by the landlord of its dangers and ample opportunity to remedy it," a tenant "may maintain an action for injuries sustained as a result of an uncorrected defect in rented quarters if there was a contractual obligation to repair the particular defect and a reasonable opportunity to correct it" because "[u]nder these circumstances the landlord has the obligation to use reasonable care to make the needed repairs with reasonable diligence." *Farley v. Yerman*, 231 Md. 444, 448 (1963).

Whether Ms. Hall can ultimately prevail simultaneously on both her contract and tort actions based on the described conduct is a different question. But accepting the factual allegations in the amended complaint as true and drawing all reasonable inferences in favor of Ms. Hall, as this Court must do, *King*, 825 F.3d at 212, at this point Ms. Hall has adequately pled a claim for negligence and the Court will deny Defendants' motion to dismiss Count Four.

## V.    Challenges to the Relief Requested

Defendants argue that two of Ms. Hall's requests for relief should be stricken. They argue that Ms. Hall's requests for relocation assistance funds and alternative housing costs are unsupported by any factual allegations. *See* ECF No. 17-1 at 21. They also argue that punitive damages are only available if a plaintiff proves malice, ill will, or

intent to injure, and that the amended complaint lacks such allegations. *See id.* at 21–22 (collecting cases).

While Ms. Hall seeks in the amended complaint for Defendants to "fund relocation assistance for displaced tenants" and "reimburse tenants' alternative housing costs," she has not alleged that she herself has been forced to expend any resources on finding new housing. Therefore, the Court will strike this requested relief.

Regarding punitive damages, Ms. Hall argues that the amended complaint "contains numerous allegations of malicious, willful, and intentional misconduct by Defendants," including that the "breaches were knowing and willful, as demonstrated by systematic failure to make repairs, a pattern of ignoring maintenance requests, continued collection of rent for uninhabitable units, operation without required licensing, and retaliatory actions against complaining tenants." ECF No. 18 at 25–26 (quoting ECF No. 14 ¶ 101). Although some judges of this Court decline to consider motions to dismiss claims for punitive damages at the pleadings stage, the undersigned has concluded that for a demand for punitive damages to proceed past the pleadings stage (whether pled as a standalone cause of action or, more properly, as a form of relief), "a plaintiff seeking punitive damages for any tort must allege, in detail, facts that, if proven true, would support the conclusion that the act complained of was done with actual malice." *Marion v. Anchor Hocking, LLC*, 792 F. Supp. 3d 629, 633 (D. Md. 2025) (quoting *Harris v. Dow Chem. Co.*, Case No. 20-cv-0988-DKC, 2020 WL 6874326, at *3 (D. Md. Nov. 23, 2020), further citations omitted). In other words, "Where a complaint purports to seek a form of relief such as punitive damages but does not allege facts that, if true, would entitle the plaintiff to that form of relief, a Rule 12(b)(6) motion is an appropriate vehicle to move that a request for such relief be

dismissed or stricken at the pleadings stage." *Id.* Under Maryland law, "[p]unitive damages may be awarded only if a plaintiff proves at trial malice, ill will, or intent to injure." *Exxon Mobil Corp. v. Albright*, 433 Md. 303, 348 (2013). Here, Ms. Hall's complaint, even accepted as true and will all reasonable inferences drawn in her favor, does not satisfy that high standard for punitive damages under Maryland law. Accordingly, her claim for punitive damages will be dismissed.

## CONCLUSION

Regarding counts one and three, the Court will dismiss with prejudice Ms. Hall's MCPA and section 14-202(8) MCDCA claims that Defendants misrepresented that they were authorized to collect rent during a time when they were not due to lack of licensure, without alleging any actual injury. But her MCPA and section 14-202(8) MCDCA claims that the same actions caused her actual injury (such as medical expenses arising from habitability issues) will survive dismissal. The Court will dismiss without prejudice any MCDCA claims in Count Three that are based on an alleged violations of the MCALA under section 14-202(10), but not Ms. Hall's FDCPA-based claim under section 14-202(11). The Court will deny the motion to dismiss as to Count Two alleging breach of implied warranty of habitability and violation of § 8-211. The Court will deny Defendants' motion to dismiss Count Four for negligence. It will dismiss her claims for relocation assistance and punitive damages.

A separate order will issue.


Date:  February 3, 2026                    _____/s/_____

                                           Adam B. Abelson
                                           United States District Judge