**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

CHARLENE HALL, individually and on behalf of all others similarly situated,

*Plaintiffs*,

v.

HEATHER HILL PROPERTY COMPANY, LLC, *et al.*,

*Defendants*

No. 25-cv-0238-ABA

## MEMORANDUM OPINION

Plaintiff Charlene Hall has sued Heather Hill Property Company ("HHPC"), Heather Hill Operating Company ("HHOC"), and One Wall Communities ("One Wall") (together, "Defendants"), which jointly operate the Heather Hill Apartments, where Ms. Hall has lived since 2017. She alleges that she paid rent to Defendants during periods when the property lacked required licensing and suffered injuries resulting from Defendants' failure to maintain habitable living conditions at the property. She alleges this conduct violated Maryland statutes and common law, and has sued on behalf of a putative class. Currently before the Court is Ms. Hall's motion for class certification. For the reasons that follow, the motion will be denied.

## BACKGROUND

Heather Hill Apartments is "a 459-unit apartment complex located in Temple Hills, Maryland." ECF No. 14 ¶ 1. Ms. Hall alleges that "Defendants operate [the complex] as a joint enterprise." *Id.* ¶ 13. Ms. Hall alleges that Defendants failed "to maintain habitable living conditions at Heather Hill Apartments" and from April 2022 through January 13, 2025, "operat[ed] without required licenses and collect[ed] rent

and fees in violation of Maryland law." *Id.* ¶¶ 1–2. Ms. Hall alleges that there are "widespread issues" at the complex, "including sewage backups, water leaks, mold, pest infestations, and numerous fire and safety code violations," and that "Defendants have consistently failed to make necessary repairs or address these serious habitability issues," "[d]espite receiving countless maintenance requests and complaints from tenants," and that those poor conditions have caused various health issues. *Id.* ¶¶ 3, 25–33.

Ms. Hall alleges that her unit specifically has "improperly installed flooring that ha[s] caused her to fall, defective interior doors, broken patio doors creating a security risk, and missing fire extinguishers on her floor," that she "has experienced persistent water damage and mold issues stemming from" "recurring leaks through bathroom exhaust fans," "water bubble formations in the kitchen ceiling drywall," "yellow liquid seeping through [the] bathroom ceiling," "water damage to closet ceilings and walls," "kitchen cabinets separating from walls due to water damage," "warped and cracking countertops from water infiltration," and "recurring black mold growth that Defendants merely painted over." *Id.* ¶¶ 38–39. Ms. Hall further alleges that her "unit has lacked essential services and appliances" at times, such as having "no heat since at least November 29, 2023," "persistent periods without hot water," "a non-functioning oven reported multiple times," "a malfunctioning refrigerator that has forced her to discard impacted groceries and endangered her insulin," "a defective dishwasher," "a leaking washing machine" and "non-working kitchen lights," and that her unit "has been plagued by" mouse infestations. *Id.* ¶¶ 40–41.

Ms. Hall also alleges that she and her family have health issues "linked to the mold in her unit." *Id.* ¶¶ 43–44. She alleges that these conditions have caused her "and

her family to suffer serious health issues, including respiratory problems, severe headaches, ear infections, chronic coughing, nasal and sinus congestion, body rashes, dizziness, and nosebleeds requiring specialized care from an Otolaryngologist." *Id.* ¶ 42. Similarly, she alleges that her "doctors have confirmed her health issues are linked to the mold in her unit, as evidenced by" doctors' letters and medical records. *Id.* ¶ 43.

Ms. Hall alleges that "HHPC and/or HHOC have failed to properly address these issues," and have "persistently ignore[d] or delay[ed] responses to Ms. Hall's maintenance tickets," "[d]espite hundreds of maintenance requests," and that "[w]hen HHPC and/or HHOC did respond to Ms. Hall's complaints, their actions were inadequate," including "paint[ing] over the black mold instead of remediating it," "refus[ing] to open walls to address the water" leak, and making "superficial repairs that failed to resolve issues." *Id.* ¶¶ 44–45.

In her amended complaint, Ms. Hall alleges that Defendants violated the Maryland Consumer Protection Act ("MCPA"), Md. Code, Com. Law §§ 13-101, *et seq*. (Count One, against all Defendants), breached the implied warranty of habitability and violated Maryland Code, Real Property § 8-211 (Count Two, against all Defendants), violated the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code, Com. Law §§ 14-201, *et seq*. (Count Three, against HHOC), were negligent (Count Four, against all Defendants), breached their contract with Ms. Hall (Count Five, against HHPC), and alternatively, that Defendants were unjustly enriched (Count Six, against HHPC and One Wall). ECF No. 14.

Earlier in this case, Defendants moved to dismiss Count One in part, and Counts Two through Four in full. ECF No. 17. The Court granted the motion to dismiss in part, holding that, among other things, Ms. Hall could only maintain the MCPA and MCDCA

claims in Counts One and Three if she alleged that in addition to paying rent while Defendants were unlicensed, she (and the putative class members) suffered injury in the form of a judgment or eviction order for failure to pay rent or concrete injury arising from uninhabitable conditions in the apartments. *Hall v. Heather Hill Prop. Co., LLC*, Case No. 25-cv-0238-ABA, 2026 WL 279112, at *4–*6 (D. Md. Feb. 3, 2026). Because Ms. Hall did not allege that any resident, including herself, was subject to a judgment or eviction order, the Court dismissed the claims based on merely paying rent while Defendants were unlicensed. *Id.* at *5–6. But Ms. Hall did allege injuries arising from uninhabitable conditions, so those claims were allowed to proceed. *Id.* The Court denied the motion to dismiss as to Counts Two and Four because Ms. Hall adequately alleged that Defendants had notice of the habitability issues and had caused at least some of the issues, and that Ms. Hall's negligence claims were not subsumed into her contract claims. *Id.* at *9–*12.

Ms. Hall then moved for class certification. ECF No. 30. Because the Court dismissed her claims that were based solely on paying rent while Defendants were unlicensed, Ms. Hall now seeks certification based on her claims asserting uninhabitable conditions at Heather Hill. She seeks certification of a class defined as "[a]ll persons who resided at Heather Hill Apartments at any time from April 2022 through January 13, 2025, paid rent or other fees to Defendants during periods when the property lacked required licensing, and suffered actual injury resulting from Defendants' failure to maintain habitable living conditions at the property." ECF No. 30 at 5. Defendants responded to the motion and Ms. Hall replied. ECF Nos. 33 & 36. The Court held oral argument on August 6, 2026. Defendants also filed a supplement after the hearing. ECF No. 44.

## STANDARD OF REVIEW

To maintain a class action, plaintiffs must establish under Rule 23(a) that "the prospective class compl[ies] with four prerequisites: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014). The class must also be readily identifiable or "ascertainable." *Id.* at 358. "In addition, 'the class action must fall within one of the three categories enumerated in Rule 23(b).'" *Id.* at 357 (quoting *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003)). Because Ms. Hall seeks certification of a claim for class-wide damages, she seeks certification under Rule 23(b)(3), which additionally requires that "(1) common questions of law or fact must predominate over any questions affecting only individual class members; and (2) proceeding as a class must be superior to other available methods of litigation." *Id.*

## DISCUSSION

### A. Class Certification under Rule 23(a) & (b)(3)

The Court concludes that class certification is inappropriate in this case. In short, and at a minimum, the proposed class does not meet the commonality and typicality requirements of Rule 23(a) or the requirement in Rule 23(b)(3) that common questions predominate over questions affecting only the individual claimants.

Commonality requires that "there are questions of law or fact common to the class," while typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(2)–(3). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" not that they have merely "all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011)

(quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "What matters to class certification" is the "capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). "A question is not common . . . if its resolution 'turns on a consideration of the individual circumstances of each class member.'" *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (quoting 7A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1763 (3d ed. 2005)).

The requirements of typicality and commonality (and adequacy of representation) often merge. *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). To be typical of the class, the representative "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of [the plaintiff's] own individual claim." *Id.* at 466–67. Ms. Hall's claims do not need to be "perfectly identical or perfectly aligned" with the claims of the other putative class members, "[b]ut when the variation in claims strikes at the heart of the respective causes of actions, [courts have] readily denied class certification." *Id.* at 467. "The essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.'" *Id.* at 466 (quoting *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998)).

Finally, the predominance inquiry under Rule 23(b)(3) asks "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 Newberg and Rubenstein on Class Actions § 4:49 at 195–96).

Ms. Hall alleges that the following issues are common between all claims (ECF No. 30 at 12):

1. “whether Defendants operated Heather Hill without required licensing in violation of Prince George’s County Code § 13-181(a) during the relevant period”;
2. “whether Defendants failed to maintain habitable living conditions at Heather Hill in violation of Maryland Code, Real Property §§ 8-211 and 8-212”;
3. “whether Defendants’ collection of rent while both unlicensed and operating an uninhabitable property constitutes an unfair or deceptive trade practice under the MCPA and a violation of MCDCA § 14-202(8)”;
4. “whether Defendants violated MCDCA § 14-202(11) through conduct that violated the substantive provisions of the FDCPA”;
5. “whether Defendants breached the implied warranty of habitability”;
6. “whether Defendants were negligent in maintaining the property in violation of Prince George’s County Code provisions designed to protect tenant health and safety”; and
7. “whether Defendants had notice of the habitability defects and a reasonable opportunity to cure them but failed to do so.”

Likewise, Ms. Hall argues that her claims are typical of those of the putative class members because all the claims “arise from the same course of conduct,” including that she and the putative class members “resided at Heather Hill during the unlicensed period, paid rent to Defendants, experienced habitability issues resulting from Defendants’ systematic failure to maintain the property, and suffered actual injuries as a result.” *Id.* at 13. Finally, and also similarly, Ms. Hall alleges that the following common questions predominate over individual issues: “[w]hether Defendants operated without a license,” *id.* at 15; “[w]hether Defendants failed to maintain habitable conditions,” *id.*, and “[w]hether Defendants’ simultaneous unlicensed operation and failure to maintain habitability constitutes a violation of the MCPA and MCDCA,” *id.*

Plaintiff's motion for class certification falls short. All of these inquiries, other than whether Defendants operated without a license (which is easy to ascertain and not disputed), depend on whether the class members' apartments were uninhabitable and whether they suffered concrete injuries as a result. On those questions, each class member will have to establish that the pertinent unit was uninhabitable for specific reasons at specific times and that those issues caused specific injuries. Each class member's claims will require individualized proof regarding the condition/defects of the unit, the timing and duration of those defects, each class member's specific injuries, Defendant's remediation efforts (if any), and Defendant's notice of the alleged defects.

For example, Count One of the amended complaint, alleging violations of the Maryland Consumer Protection Act, requires each Plaintiff and class member to show "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 380 (4th Cir. 2022) (quoting *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012)). Thus, Plaintiff and the putative class would need to show an unfair practice and related injury (*e.g.*, collecting rent while Plaintiff and each class member's apartment was uninhabitable). For Count Two, breach of the implied warranty of habitability, each Plaintiff and class member would need to show that their apartments were not "fit for human habitation," *id.* § 8-212(c), meaning they were not "free from serious defects or conditions that constitute . . . a fire hazard or other serious and substantial threat to the life, health, or safety of occupants of the dwelling unit," *id.* § 8-212(a), that Defendants had notice of the defects, *id.* § 8-212(f)(1), and that they had a reasonable opportunity to repair the defects yet failed to do so, *id.* § 8-212(f)(2). Again, as part of their burden of proof on this claim, Plaintiff and the putative class would have to prove serious defects

in *each* of their units, Defendants' notice of the defects, and what Defendants did or did not do to alleviate the issues for each of them. For Count Three, alleging violations of the Maryland Consumer Debt Collections Act, Plaintiff and the putative class would need to prove, among other things, that as to each class member Defendants "did not possess the right to collect the amount of debt sought" and "attempted to collect the debt knowing that [it] lacked the right to do so." *Chavis v. Blibaum & Assocs., P.A.*, 476 Md. 534, 553 (2021) (quoting *Mills v. Galyn Manor Homeowner's Ass'n, Inc.*, 239 Md. App. 663, 677 (2018)). Thus, Plaintiff and the putative class would have to show that each class member's unit was uninhabitable and, therefore, Defendants did not have the right to collect rent from them, and Defendants had knowledge of those conditions. For the negligence claim in Count Four, Plaintiff and the class would have to establish as to each class member that Defendants breached a duty to maintain Plaintiff's and each class member's apartment in a habitable state, and actual injury resulting from such breach. *Richwind Joint Venture 4 v. Brunson*, 335 Md. 661, 670 (1994), *overruled on other grounds by Brooks v. Lewin Realty III, Inc.*, 378 Md. 70 (2003)). For Count Five, breach of contract, Plaintiff and the class would have to prove, for example, an express or implied agreement to provide habitable housing, Defendants' breach thereof for each class member, and damages. *Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 307 (4th Cir. 2020). And for Count Six, unjust enrichment, Plaintiff and the class would be required to show that it would be unjust for Defendants to retain the benefit of rental payments made by Plaintiff and each class member while their particular unit was uninhabitable. *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295 (2007).

Because each class member will not have suffered the same injuries as Ms. Hall, *Dukes*, 564 U.S. at 349–50, and proof of Ms. Hall's specific claims will not necessarily

advance the other class members' claims, *Deiter*, 436 F.3d at 466–67, the proposed class does not and cannot meet the commonality and typicality requirements of Rule 23(a). *See also Bennett v. Donaldson Grp., LLC*, Case No. 1372, Sept. Term, 2021, 2022 WL 2981494 (Md. Ct. Spec. App. July 28, 2022) (holding "that the specific elements of each case would 'essentially engulf the common issues'" because "each tenant would have to establish that their unit was uninhabitable" including establishing "which portions of the unit were damaged, that repairs were not performed in a reasonable time, and that the breach caused actual damages") (some internal quotation marks omitted); *Cox v. Stone Ridge at Vinings, LLC*, Case No. 1:12-cv-2633-AT, 2014 WL 12663763, at *5 (N.D. Ga. Sept. 30, 2014) (denying class certification and holding that the "class members would have to prove [f]acts relating to Defendants['] handling and maintenance of each of their individual apartments even if they were successful in presenting probative evidence of Defendants' deficient overall maintenance and building management practices").

For the same reasons, the predominance of these individual issues, rather than common class-wide issues, will drive the case. *Tyson Foods*, 577 U.S. at 453; *see also Akeem v. Dasmen Residential, LLC*, Case No. 19-cv-13650, 2021 WL 4804049, at *1, *8 (E.D. La. Oct. 14, 2021) (holding that predominance was not satisfied because "determining both liability and damages as to each putative plaintiff requires examining whether and to what extent each individual apartment unit was affected by the alleged water intrusion, mold, maintenance problems, or other disrepair, and the exact nature of each person's alleged injuries"). This is true even if, as alleged by Ms. Hall, many of the maintenance issues at Heather Hill are systemic and affect multiple apartment buildings. *See Cox*, 2014 WL 12663763, at *4 (acknowledging that while the putative

class members "may face some of the same serious building maintenance problems" such as "mold, and water leakage problems," "the actual scope and nature of th[ose] problems will be different depending on the apartment's location, specific maintenance history, and other factors"). The core questions in this case will still go to the habitability of each unit and the individual injuries suffered by each tenant.

Ms. Hall has not pointed to any cases certifying a class like this one focused on the habitability of individual apartments. In her reply brief, she argues that "in *Johnson v. City of Annapolis*, No. 1:21-cv-01120-CCB, ECF No. 97 (D. Md. Feb. 6, 2023), this Court certified a closely analogous case where tenants alleged that a defendant's uniform policy—not unit-specific conditions—caused building-wide habitability failures." ECF No. 36 at 1 n.1. But there does not seem to have been any opposition to the motion for class certification in that case and the case concerns discriminatory housing claims against a city, which distinguishes the case factually. *See, e.g., Cox*, 2014 WL 12663763 at *4 (concluding that the proposed class could not be certified where each claim required individualized focus "without a common theme of discriminatory motive").

During oral argument, Ms. Hall also suggested that *Twyman v. Rockville Housing Authority*, 99 F.R.D. 314 (D. Md. 1983), supported class certification in this case. In *Twyman*, residents of low-income public housing sued the Rockville Housing Authority, alleging that it violated Housing and Urban Development regulations by assessing maintenance charges and certain late fees and by failing to provide grievance hearings and proper notice before filing summary ejectment actions. *Id.* at 316–18. But the class in *Twyman* was largely an injunctive relief class under Rule 23(b)(2) not a damages class under Rule 23(b)(3) like this one. *Id.* at 319. And, unlike here, *Twyman*

did not involve individualized questions regarding the condition of each apartment and instead, dealt with allegedly illegal *policies* equally applicable to all residents.

As a result, the Court concludes that the proposed class does not satisfy the requirements of Rule 23(a) or 23(b)(3), in particular with respect to the commonality, typicality, and predominance requirements.

**B. Certification under Rule 23(c)(4)**

Ms. Hall alternatively argues that the Court should certify an "issue" class under Rule 23(c)(4), which provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). Ms. Hall argues that the following issues are appropriate for certification under 23(c)(4) (ECF No. 30 at 18):

1. "whether Defendants operated Heather Hill without required licensing in violation of Prince George's County Code § 13-181(a)";
2. "whether Defendants failed to maintain habitable living conditions at Heather Hill in violation of Maryland Code, Real Property §§ 8-211 and 8212";
3. "whether Defendants' collection of rent while both unlicensed and failing to maintain habitable conditions violated the MCPA";
4. "whether Defendants' debt collection practices while both unlicensed and failing to maintain habitable conditions violated the MCDCA";
5. "whether Defendants had notice of habitability defects and failed to cure them within a reasonable time";
6. "whether Defendants' failure to maintain the property violated applicable Prince George's County Code provisions establishing duties to tenants."

But these questions are essentially the same as the inquiries discussed above, and they would all require individualized assessments of the habitability of each apartment, meaning that these questions are also not certifiable under Rule 23(c)(4). *See Student A v. Liberty Univ., Inc.*, 697 F. Supp. 3d 496, 534 (W.D. Va. 2023) ("The named Plaintiffs'

argument to certify an issues class, however, incorporates the same flaws as their arguments to certify a class under Rule 23(b)—namely, the misperception that individual differences among students are immaterial to class-wide resolution of the claims."); *Parsons v. Columbia Gas Transmission, LLC*, Case No. 2:19-cv-00649, 2022 WL 4809492, at *16 (S.D.W. Va. Sept. 30, 2022) (holding that because "highly individualized mini-trials would still be required . . . certification under Rule 23(c)(4) is not proper"). During oral argument, Plaintiff's counsel suggested that at least the first question was certifiable under Rule 23(c)(4). But, as stated above, the answer to that question is not in dispute—Defendants do not contend that they always maintained the proper licensure. Thus, adjudicating that particular issue will not "reduce the range of disputed issues." *In re A.H. Robins Co., Inc.*, 880 F.2d 709, 740 (4th Cir. 1989), *abrogated on other grounds by Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).

The Court concludes that the issues identified by Ms. Hall are not appropriate for certification under Rule 23(c)(4) under these circumstances.

**CONCLUSION**

Because Ms. Hall has not established that her proposed class meets the requirements of Rules 23(a) and (b)(3) or Rule 23(c)(4), the Court will deny her motion for class certification.

A separate order will issue.

Date: August 24, 2026

*/s/*
Adam B. Abelson
United States District Judge